**NORTH AMERICAN UTILITY SECURI-
TIES CORPORATION v. POSEN et al.
(SECURITIES AND EXCHANGE COM-
MISSION, Intervener).**

**No. 223, Docket 21283.**

United States Court of Appeals
Second Circuit.

Argued April 7, 1949.

Decided June 23, 1949.

Sullivan & Cromwell, New York City (Stoddard M. Stevens Jr. and Henry N. Ess, III, New York City, of counsel), for appellant.

Irving Steinman, New York City, for defendants-appellees.

Roger S. Foster, General Counsel, Myron S. Isaacs, Special Counsel, Howard S. Guttmann and Richard P. Donovan, Attorneys, Washington, D. C., for intervener-appellee.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff-appellant is an investment company organized under the laws of Maryland. It is a subsidiary of The North American Company which owns all of plaintiff's preferred stock and about 80% of its common stock, the other 20% being publicly held. By an order dated April 14, 1942, issued pursuant to section 11 (b) (1) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k (b) (1), the Se-

curities and Exchange Commission directed North American to dispose of its ownership of securities issued and properties owned, controlled, or operated by the plaintiff.[1] For the purpose of complying with this order North American filed with the Commission on June 21, 1948 pursuant to section 11 (e) of the Act, 15 U.S.C.A. § 79k (e), a plan under which the plaintiff will be dissolved, North American as the sole preferred stockholder will receive all its assets and the common stockholders will receive nothing. The Commission issued a notice and order providing for hearings on the plan, instituting proceedings and directing hearings pursuant to section 11 (b) (2), 15 U.S.C.A. § 79k (b) (2), and consolidating the proceedings. Hearings were commenced and the proceedings are still pending before the Commission. No report on the plan has been issued by the Commission.

The defendants Posen, Kraft and Kalik are a self-constituted protective committee for holders of the plaintiff's publicly held common stock.[2] As such committee they filed with the Commission an amended declaration relating to a solicitation of the common stockholders for authority to represent them before the Commission or any court.[3] In accordance with the requirements of Rule U-62 of the Commission's General Rules and Regulations, the proposed authorization is unconditionally revocable at the will of, and without expense to, the stockholder signing it, and he is left free to exercise his own judgment with respect to consenting to or dissenting from any specific plan. In a letter proposed to accompany the authorization blank, the committee expresses the view that the plan submitted by North American is unfair to the plaintiff's common

stockholders and announces the committee's intention to oppose it. The letter discloses that the committee intends hereafter to apply to the Commission for reasonable compensation for services and reimbursement of expenses. The Commission permitted the declaration, with the proposed accompanying letter, to become effective on October 18, 1948. Shortly thereafter the plaintiff commenced the present action to enjoin the defendants from making the proposed solicitation on the ground that it is forbidden by section 11 (g) of the Act, 15 U.S.C.A. § 79k (g). The Commission was allowed to intervene as a party defendant pursuant to Rule 24 (b) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. and filed its answer. The original defendants also answered. Each side then moved for summary judgment. The plaintiff's motion was denied; the motion of the defendants and the intervener was granted, D.C., 82 F.Supp. 16. From the judgment dismissing its complaint the plaintiff has appealed.

The question presented by this appeal relates to the proper interpretation of section 11 (g) of the Act, 15 U.S.C.A. § 79k-(g). This section so far as material reads as follows:

"(g) It shall be unlawful for any person to solicit * * * any proxy, consent, authorization, power of attorney, deposit, or dissent in respect of any reorganization plan of a registered holding company or any subsidiary company thereof * * * unless—

\* \* \* \* \* \*

"(2) each such solicitation is accompanied or preceded by a copy of a report on the plan which shall be made by the Commission after an opportunity for a hearing

---

[1] 11 S.E.C. 194, 221-223, affirmed North American Co. v. Securities and Exchange Comm., 2 Cir., 133 F.2d 148, affirmed 327 U.S. 686, 66 S.Ct. 785, 90 L.Ed. 945.

[2] Posen and Kraft own shares of common stock and were granted leave to participate in the hearings as individual stockholders. Kalik is a lawyer; he owns no stock.

[3] The authorization blank reads:

"You are hereby authorized to act for and represent the undersigned as owners of said common stock in connection with a certain plan of dissolution dated June 21, 1948 filed by The North American Company for the North American Utility Securities Corporation, under Section 11 (e) of the Public Utility Holding Act of 1935, pending before the Securities and Exchange Commission, or any modification of such plan, and to appear before the Securities and Exchange Commission or any court or other commission or other regulatory body in connection with such proceeding."

on the plan and other plans submitted to it, or by an abstract of such report made or approved by the Commission; and

"(3) each such solicitation is made not in contravention of such rules and regulations or orders as the Commission may deem necessary or appropriate in the public interest or for the protection of investors or consumers.

"Nothing in this subsection or the rules and regulations thereunder shall prevent any person from appearing before the Commission or any court through an attorney or proxy."

The condition set forth in subdivision (2) cannot at present be met, as the Commission has not reported on the plan; hence the plaintiff contends that the proposed solicitation is unlawful. The defendants and the Commission reply that section 11 (g) is inapplicable to a solicitation of authorizations merely to represent stockholders in hearings on a plan before the Commission or in court. They assert that the section was intended only to prevent a premature and irrevocable commitment of security holders for or against a plan, and not to limit their representation at hearings or their communication among themselves for the purpose of selecting properly qualified representatives at such hearings. They support the argument by reference to other subdivisions of the section, to its legislative history and to the Commission's long-standing administrative interpretation of the section.

Read literally the statutory language —"solicit * * * any * * * authorization * * * in respect of any * * * plan"—is broad enough to cover every kind of proxy authorization—a proxy to appear and argue as well as a proxy to vote. But in the interpretation of statutes where the literal meaning of the words leads to unreasonable results at variance with the policy of the legislation, a court should follow the legislative purpose rather than the literal meaning.[4]

The plaintiff's literal interpretation of section 11 (g) would impose a prohibition on all solicitation prior to the completion of Commission hearings and the issuance of its report on the plan. This would result in denying to the great majority of security holders any representation at the hearings since, in general, only a small percentage of the holders of stock sold to the public have a sufficient stake in the corporate enterprise to justify appearing in person or by their own attorneys at the hearings on a plan of reorganization.[5] That Congress did not intend a statutory construction which would seriously curtail the stockholder's opportunity to make himself heard is indicated not only by the last sentence of section 11 (g), but also by reiteration of the phrase "after notice and opportunity for hearing," or its equivalent, which occurs in section 11 (b) (1, 2), 11 (f) and 11 (g) (2). The Commission argues most persuasively that opportunity for a hearing can be given to widely-scattered and small security holders of a holding company system only if committees are permitted, subject to supervision imposed by its regulations, to organize and solicit authorizations to appear before it as representatives of such security holders. The statutory purpose to give all security holders an opportunity to be heard on any plan can be reconciled with the apparent prohibition in the first sentence of section 11 (g) against soliciting authorizations in respect to any plan by construing the prohibition, as the Commission has done, to be limited to authorizations which commit the security holders for or against the plan. Some support for this construction is found in the legislative history of the section. The Senate Committee Report on S. 2796, the bill which became, with certain amendments, the Public Utility Holding Company Act of 1935, contains the following comment on section 11 (g):

" * * * This subsection is designed simply to assure that a security holder will

---

[4] See United States v. American Trucking Ass'ns, 310 U.S. 534, 542-544, 60 S. Ct. 1059, 84 L.Ed. 1345, and authorities there cited.

[5] In the case at bar some 23 stockholders representing about 20% of the plaintiff's common stock outstanding in the hands of the public appeared in person or by attorney at the Commission hearings. More than 72,000 of the 90,-397 shares held by the public remained unrepresented at the hearings.

have a fair opportunity to consider concrete proposals on their merits with full and fair disclosure of all material facts *before he is pressed to register his vote on a reorganization plan or to tie himself irrevocably* to a plan which in the future may develop to be unfavorable to him and to involve great expense on his part." (Italics added.) S.Rep.No. 621, 74th Cong. 1st Sess. pp. 33-4.[6]

The appellant argues that this comment applies only to an earlier version of section 11 (g) which embraced only reorganization plans proper. However, the expansion of the scope of the section to include within its coverage divestment and dissolution plans does not in any way minimize the fact that Congress in enacting this section was expressly concerned with protecting security holders from committing themselves prematurely to a particular plan before receiving full disclosure of the material facts.

 The literal interpretation for which the plaintiff contends is in direct conflict with the Commission's long-standing administrative interpretation. The first proxy rules under the Holding Company Act were adopted in July 1937. In Holding Company Act Release No. 759 the Commission noted that the rules had been adopted under section 12 (e) [7] as well as 11 (g) of the Act and that they distinguished between solicitations "restricted in scope to representation in connection with the early stages of the plan, such as the negotiation or development of the plan, or the appearance before a court or commission in that connection," and general solicitations "of consents to or dissents from a plan." See also Fourth Annual Report of the Commission, p. 72; Holding Company Act Releases Nos. 1900 and 1915. This distinction between the two types of solicitation has been consistently maintained throughout the Commission's administration of the Act and its rules and regulations. Its brief states that in more than 60 cases committees have been permitted to solicit security holders in connection with hearings on section 11 (e) plans. An administrative interpretation which runs counter to a legislative enactment is, of course, of no significance; but where the meaning of a statutory provision is not clear, the interpretation put upon it by those charged with the duty of administering the Act is entitled to great weight. United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Charles Hughes & Co. v. Securities and Exchange Comm., 2 Cir., 139 F.2d 434, 437; American Power & Light Co. v. Securities and Exchange Comm., 1 Cir., 141 F.2d 606, 621. In our opinion the Commission's interpretation is a permissible construction of the statutory language and one adapted to further the legislative purpose of giving all security holders an opportunity to be heard before they commit themselves for or against a plan.

The appellant argues that the Commission's interpretation makes section 11 (g) inapplicable to any plan filed under section 11 (c), since a plan submitted under that section may be approved by the Commission and carried into effect without the security holders ever being required to express by vote their approval or disapproval of it, as this court stated in Phillips v. Securities and Exchange Comm., 2 Cir., 153 F.2d 27, certiorari denied 328 U.S. 860, 66 S.Ct. 1350, 90 L.Ed. 1630. The argument is fallacious. Although an 11 (e) plan need not require a vote, it may contain a provision, either voluntarily imposed by the corporation submitting the plan or added to the

---

[6] A similar statement was made by Representative Rayburn who sponsored the bill in the House. 79 Cong. Rec. p. 10325.

[7] Sec. 12(e). "It shall be unlawful for any person to solicit or to permit the use of his or its name to solicit, by use of the mails or any means or instrumentality of interstate commerce, or otherwise, any proxy, power of attorney, consent, or authorization regarding any security of a registered holding company or a subsidiary company thereof in contravention of such rules and regulations or orders as the Commission deems necessary or appropriate in the public interest or for the protection of investors or consumers or to prevent the circumvention of the provisions of this title or the rules, regulations, or orders thereunder."

plan by the Commission after hearings, requiring stockholder approval. See Great Lakes Utilities Company, 11 S.E.C. 87, 95. In determining whether the plan as submitted is fair and equitable and whether or not security holders should be required to vote on it, the Commission will certainly be aided if there is an adequate representation of security holders at the hearings.

The judgment is affirmed.

L. HAND, Chief Judge (dissenting).

The scheme of § 11 appears to me to forbid my brothers' conclusion, in spite of the Commission's long settled interpretation. When a company submits "a plan" to the Commission under § 11 (e), the "notice and hearing" which it must give is, in part at any rate, in order to learn whether the shareholders approve or disapprove; and the Commission's own "approval" may well depend upon what those say who attend. Perhaps it would be desirable before that hearing to allow electioneering by interested parties so that by an accumulation of proxies they might present a formidable front to the Commission. Be that as it may, § 11 (g) unconditionally forbids electioneering "in respect of any plan" unless it is "accompanied * * * by a copy" of the Commission's report upon the plan or an accredited abstract of it; and on the face of it that covers this preliminary hearing. The purpose of this I should have thought pretty plain, had it not been for my brothers' contrary conclusion. Congress did not wish shareholders to be subjected to the importunities of persons who seek to represent them, until the Commission has provisionally approved the plan, and until the shareholders have received a disinterested report upon it. That is in accord with the underlying theory that small investors are usually an uninformed, yet complaisant, group, not disposed to be nice in parting with their suffrage, who would be protected by the report. How far the Commission might think it desirable to sound out shareholders at the hearing under § 11 (e) was left to it alone; but the opportunity to gather up proxies for that hearing was thought open to abuse. It is true that even after it has approved a plan, the Commission need not take a vote; but that has nothing to do with how the vote shall be taken when they do choose to take one. Until the Commission's approval the shareholders must be free from any electioneering by vicarious champions, because they are not armed to resist it.

Whether rulings of administrative tribunals should deflect a federal judge from his personal reading of a statute or an ordinance, occupies a great part of his time. Nevertheless, even in the case of those tribunals whose immunity rates highest, there is always a reserved review, for, at least in theory, there comes a point when not only may he, but he should, assert his own convictions. All I can say is that in the case at bar I think that that point has been passed.

As to § 12 (e) on which the Commission also relies, it is so far afield from the subject matter that I do not think it necessary to discuss it.