**AMERICAN AIRLINES, Inc., et al. v. CIV-
IL AERONAUTICS BOARD.**

No. 9739.

United States Court of Appeals
Seventh Circuit.

Dec. 8, 1949.

Paul M. Godehn, John T. Lorch, Chicago, Ill., Henry L. Hill, Chicago, Ill. (Mayer, Meyer, Austrian & Platt, Chicago, Ill., of counsel), for petitioners.

Emory T. Nunneley, Jr., Greer M. Murphy, Warren L. Sharfman, Washington, D. C., Edward Dumbauld, William D. McFarlane, Department of Justice, Washington, D. C., Hardy K. Maclay, Washington, D. C., Charles P. Taft, Cincinnati, Ohio, Richard Bentley, Kenneth B. Hawkins, Richard H. Merrick, Chicago, Ill. (Headley, Taft & Headley, Cincinnati, Ohio, Cassels, Potter & Bentley, Chicago, Ill., Landis, Gewirtz & Maclay, Washington, D. C., of counsel), for intervenor Air Freight Forwarders Ass'n.

C. J. Burrill, E. C. Riordan, Chicago, Ill. (Haskins, Maguire & Haskins, Chicago, Ill., of counsel), for intervener International Forwarding Co.

Homer S. Carpenter, Washington, D. C., Gregory A. Gelderman, Chicago, Ill. (Turney, Carpenter & Turney, Washington, D. C., of counsel), for intervener Acme Air Express, Inc.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Petitioners seek to reverse an order of the Civil Aeronautics Board authorizing

air freight forwarders to engage indirectly in interstate air transportation. They do not ask us to review the evidence but contend that the findings are insufficient to sustain the order and that the board has erroneously interpreted the law.

The suit had its inception in a consolidated proceeding known as the Air Freight Forwarder Case, where some 78 parties filed applications under the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq., requesting the board to issue either certificates of public convenience and necessity or exemption orders permitting them to engage in indirect air transportation as air freight forwarders. Air freight forwarders, who have become active but comparatively recently, procure shipments from shippers, assemble them and tender the consolidated lot gathered from the various shippers to an air carrier for transportation at a bulk rate which is lower than the rates collected by the forwarders from the shippers. The forwarder assumes the responsibility of a carrier, though he carries no merchandise himself but ships entirely by air in other carriers' airplanes. Upon arrival of the consolidated shipment at the airport of destination, the forwarder divides the bulk shipment and distributes the separate portions thereof to the individual consignees. The difference between the high rates collected by forwarders and the low rates paid by them to carriers is commonly spoken of as the "spread" and provides the forwarder with expenses and profits.

When the applications were filed, petitioners, consisting of permanently certified air carriers, engaged directly in transportation of persons, property and mail by air within the United States, having intervened, opposed them. After hearing and recommendation by the examiner, the board, on September 8, 1948, entered the order now on review.

In order properly to understand the order and its scope and significance, it is essential that we examine the statutory law involved. Section 401(a) of the Civil Aeronautics Act of 1938, 49 U.S.C.A. §§ 401, 481, provides that no air carrier shall engage in air transportation unless a certificate issued by the board authorizes such service. Section 401(d) provides that: "The Board shall issue a certificate authorizing the whole or any part of the transportation covered by the application, if it finds that the applicant is fit, willing, and able to perform such transportation properly, and to conform to the provisions of this Act and the rules, regulations, and requirements of the Board hereunder, and that such transportation is required by the public convenience and necessity; otherwise such application shall be denied."

Air freight forwarders, as we have seen, do not carry anything by air. They are classed as air carriers because they are included in the definition of that term in Section 1(2) of the Act, the pertinent portion of which follows: "'Air carrier' means any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation: Provided, That the Board may by order relieve air carriers who are not directly engaged in the operation of aircraft in air transportation from the provisions of this Act to the extent and for such periods as may be in the public interest."

The board denied the applications for certificate of convenience and necessity but concluded that the forwarders, as indirect carriers, should be relieved from the provisions of the Act, adopted a regulation covering allowance of applications for air freight forwarders and directed that the 58 applicants be permitted to operate under exemption upon complying with the terms of the regulation. The board denied relief to such of the applicants as had abandoned their application during the progress of the proceedings and such of them as sought international rights and those directly or indirectly controlled by railroad interests. It made no finding that the applicants exempted were fit, willing and able to furnish public service as forwarders or that their operations were required by the public convenience and necessity; and it is largely upon this lack of finding that petitioners ground their objections to the order.

In other words, it is insisted by petitioners that the failure to make a finding

that the applicants were fit, willing and able to perform transportation properly and that such transportation was required by the public's convenience and necessity as provided in Section 401(d) of the Act is a fatal defect. However, it is provided in Section 1(2) of the Act that the board may by order exempt air carriers who are not directly engaged in the operation of aircraft "to the extent and for such periods as may be in the public interest," and the board found that it was in the public interest to relieve such carriers from the provisions of the Act to the extent and for the period fixed. Our question then is whether, when the board enters upon a determination of whether it will grant exemption to an indirect carrier, that is, whether it will relieve the indirect carrier from the other provisions of the Act as provided in Section 1(2), it is necessary for the board to follow the standards of Section 401 under which, before authorizing the carrier to act, it must find that the applicant is fit, willing and able and that its operation is in the public interest. If the board was not bound to adhere to that standard and if it had a right under the statute, in the exercise of its discretion, to excuse indirect carriers, that is, those who do not engage directly in air operations, from the requirements of the Act, then its order was proper.

We think petitioners are over-meticulous in their conception of the standard fixed by the statute. These forwarders do not engage in air transportation; they merely gather freight on the ground, assemble it, deliver it so assembled to the carrier for shipment, then, after shipment has ended, divide it and deliver it to the several consignees. All their activities are on the ground. The board found that their operations tend to help the direct air carriers by increasing the volume of air transportation and are, therefore, of benefit to petitioners. The board reasoned that, inasmuch as the applicants were in the unique position of being subject to the Act as indirect carriers but performed no function in the air and, inasmuch as they were comparatively recent newcomers in the industry, there was insufficient evidence to show that their operations were such that they should have certificates under Section 401, that is, certificates of convenience and necessity; but that, in view of their limited activities, they should have certificates of exemption from any requirement of the Act, limited in time.

We think the order did not contravene the purpose of the statute but rather carried it into effect. Apparently Congress contemplated that for all kinds of carriers there should be two methods by which operations could be authorized; first, for all operations, certificates of convenience and necessity might issue; second, for indirect operations, certificates of exemption might issue. The plain reading of the statute impels this conclusion. It is unambiguous and, when properly construed, its language leads only to this one conclusion. Section 401 clearly requires the board, before issuing a certificate, to find that the transportation authorized is required by the public's convenience and necessity and that the applicant is fit, willing and able; but the proviso of Section 1(2), just as clearly fails to include any such requirements and authorizes the board to issue relief or exemption orders for indirect carriers "to the extent and for such periods as may be in the public interest." The first section is concerned with the necessity or convenience demanding air transportation service and the second, with the advisability of relieving indirect carriers of the obligation of proving such necessity. We agree with the board that if the test for determining whether an indirect carrier should be relieved of the obligation of proving necessity is to require proof of necessity in every case, it would completely nullify the purpose of Congress as expressed in Section 1(2). As said in Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332: "The office of a proviso is well understood. It is to except something from the operative effect, or to qualify or restrain the generality, of the substantive enactment to which it is attached." "If possible, the act is to be given such construction as will permit both the enacting clause and the proviso to stand and be construed together with a view to carry into effect the whole purpose of the law. 1 Kent,

Com. 463." White v. United States, 191 U.S. 545, 551, 24 S.Ct. 171, 172, 48 L.Ed. 295. See also Foster v. United States, 7 Cir., 47 F.2d 892. Applying these principles to the Civil Aeronautics Act, we think there can be no question that the board properly construed each of the sections and that there is no requirement of proof of convenience and necessity of the proposed operations to be read into Section 1(2) in order to preserve other portions of the Act and its basic objectives.

That ground for distinction between direct carriers and indirect carriers exists, is substantiated by the findings which stand unimpeached before us. Indirect carriers do not operate aircraft; they merely gather freight on the ground to be carried in aircraft; they do not compete with direct aircraft carriers, such as petitioners, in the operation of airplanes. All of the merchandise gathered by forwarders must move from them to and over one of the direct carriers, and for carrying it, the direct carrier receives the full amount of the legal tariffs. The forwarder has relatively a very small investment. Obviously the functions of direct and indirect carriers are in no wise competitive and Congress was perfectly justified in distinguishing their respective functions and in relieving the indirect carrier from the obligations imposed on direct carriers by virtue of Section 401. We think the findings of the board and the language of the Act are such that the order of the agency charged with the administration of the law must be approved. National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 130, 64 S.Ct. 851, 88 L. Ed. 1170; Unemployment Compensation Commission v. Aragan, 329 U.S. 143, 153, 154, 67 S.Ct. 245, 91 L.Ed. 136.

■ The petitioners apparently contend that sufficient subsidiary findings of fact upon the part of the board to support the ultimate finding are lacking. We do not have the transcript of evidence before us but we do find subsidiary findings clearly indicating the basis for the decision and demonstrating the reasonableness of the ultimate finding that the temporary exemption of air freight forwarders from certain provisions of the Act is in the public in-

terest. It should be remembered and emphasized that "administrative finality is not, of course, applicable only to agency finding of 'fact' in the narrow, literal sense. The (agency's) findings * * * based upon judgment and prediction, as well as upon 'facts' * * * are not subject to re-examination by the court unless they * * * were not arrived at in 'accordance with legal standards.' " Securities and Exchange Comm. v. Central-Illinois Securities Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377, 1393. See also Securities and Exchange Comm. v. Chenery Corp., 332 U.S. 194, 207, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995.

■ The regulation creates a distinct class of indirect carriers known as Air Freight Forwarders, a member of which is defined by the following language: One who, "1, assembles and consolidates or provides for assembling and consolidating of such property and performs or provides for the performance of brake-bulk and distributing operations with respect to such consolidated shipments, 2, assumes responsibility for the transportation of such property from the point of receipt to point of destination, and 3, utilizes for the whole or any part of the transportation of such shipments, the services of a direct air carrier subject to the Act." It provides that no person may operate as an air freight forwarder without first procuring a letter of registration from the board; that such letter shall issue only if an application supplying certain detailed information has been filed and then, only if it appears that the applicant's operations will not be inconsistent with the public interest. The authorization may be revoked at any time and is not valid beyond five years. All such forwarders are exempted from the requirement of proof of fitness, willingness and ability and of public convenience and necessity. This regulation, we think, is clearly within the purview of the authority granted to the board by Section 1(2) of the Civil Aeronautics Act which we have quoted. The plain intent is that a forwarder may be relieved from the requirements of the Act to such extent as the board concludes is in the public interest. There is no requirement of proof that the operations of the

forwarder be in the public interest, but, rather, the forwarder is to be relieved if the board finds that such exemption is in the public interest, and this the board did find. It found also that, upon consideration of all the facts and evidence of record, the public interest in and the need of air forwarders had been sufficiently established to justify the authorization of freight forwarder operations for a limited period during which essential experience might be developed upon which a permanent policy could be soundly determined.

In support of this are many subsidiary findings,—for example,—air freight would be used profitably and extensively by the public. There exists a tremendous potential for air freight. Many valuable services would be accorded shippers by air freight forwarders. Similarly, large benefits would accrue to direct carriers from forwarder operations. Forwarders, through their solicitations, would develop new air cargo business and help overcome the directional unbalance of trade. From these and other findings, it is apparent that the board found reasonable basis for believing that it should try out the proposed course of action outlined in its regulation and acted accordingly.

█ Obviously, we are not concerned with the question of whether this was a wise course of action. Nor are we concerned with whether we would have entered the order ourselves or whether the board's interpretation is the only reasonable one. Our function is limited; we may only inquire as to whether the board's interpretation of the statute has warrant in the record and a reasonable basis in law. Unemployment Compensation Commission v. Aragan, 329 U.S. 143, 153–154, 67 S.Ct. 245, 91 L.Ed. 136. See also National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170.

██ It would seem unnecessary to reiterate that presumptively the board's order is correct and, under any and all circumstances, its decision entitled to great weight. We think it clear that it can not be said that the board has failed to make adequate findings in this case, where it is dealing largely with an experimental undertaking. The language of the Supreme Court in Railroad Commission v. Rowan & Nichols Oil Company, 310 U.S. 573, 60 S.Ct. 1021, 1024, 84 L.Ed. 1368 is pertinent: "Certainly in a domain of knowledge still shifting and growing, and in a field where judgment is therefore necessarily beset by the necessity of inferences bordering on conjecture even for those learned in the art, it would be presumptuous for courts, on the basis of conflicting expert testimony, to deem the view of the administrative tribunal, acting under legislative authority, offensive to the Fourteenth Amendment. * * * Plainly these are not issues for our arbitrament. * * * It is not for the federal courts to supplant the Commission's judgment even in the face of convincing proof that a different result would have been better." See also 310 U.S. 576, 61 S.Ct. 346, where the same case was under consideration: "When we consider the limiting conditions of litigation—the adaptability of the judicial process only to issues definitely circumscribed and susceptible of being judged by the techniques and criteria within the special competence of lawyers—it is clear that the Due Process Clause does not require the feel of the expert to be supplanted by an independent view of judges on the conflicting testimony and prophecies and impressions of expert witnesses."

Petitioners contend that the board improperly held that the second proviso of Section 408(b) of the Act is inapplicable to the acquisition of control of an indirect air carrier. That Section makes unlawful various kinds of acquisitions of control in the absence of approval of the board as provided in Section 408(b). Under the section, an air carrier or any other common carrier may not "acquire control of any air carrier in any manner whatsoever" unless the board approves. But the board is required to grant approval unless it finds that the proposed acquisition of control will not be consistent with the public interest, subject, however, to two further provisos. The first requires the board to withhold approval of control which would result in creating a monopoly and thereby restrict competition or jeopardize another air carrier not a party

to the acquisition of air control. The second, with the interpretation of which we are concerned here, is, so far as pertinent, as follows: "Provided further, That if the applicant is a carrier other than an air carrier, or a person controlled by a carrier other than an air carrier or affiliated therewith * * * the Board shall not enter such an order of approval unless it finds that the transaction proposed will promote the public interest by enabling such carrier other than an air carrier to use aircraft to public advantage in its operation and will not restrain competition." 49 U.S.C.A. § 488.

The board found that the limitations of the statute were applicable to certain applicants controlled either directly or indirectly, by surface common carriers, and with this action petitioners seem to agree. The board further concluded, however, in deciding whether control of an air freight forwarder by a surface freight forwarder should be approved, that "the second proviso does not apply in a case where the company of which control is acquired is an air freight forwarder," saying: "We believe that Congress did not intend it to be applicable. The language of the section is such as to indicate that it was directed to the case of control of a direct air carrier by a direct common carrier or by a person controlled by or controlling such common carrier or affiliated therewith. The requirements laid down therein were obviously framed with reference to the experience of direct carriers and are at best inappropriate where indirect carriers are involved. We hold accordingly that the second proviso of section 408(b) does not apply in this situation."

Though the board did not follow the literal language of the second proviso, it is clear that it made its interpretation in order to avoid an anomalous result, contrary to the congressional intent. If the proviso literally applied to forwarders, as contended by petitioners, the board could approve the control of a direct air carrier by a direct common carrier on making the findings specified in the second proviso but could never approve the control of an indirect carrier by indirect common carriers, since indirect carriers never "use" aircraft, and the findings required by the second proviso could never be made. We agree with the board that the proviso is not a prohibition but a restriction, and that, since the dangers sought to be guarded against by Section 408 are obviously more acute in the acquisition of control of a direct air carrier than in the case of the acquisition of control of an indirect air carrier, Congress did not intend to "permit the former under specified conditions and to prohibit completely the latter." It certainly did not use language indicating an intention to accomplish that end, for, as it is clear from the findings that there were no indirect carriers in existence at the time the Act was passed and that Congress was concerned only with the problem of direct air carriers, the use of the words "indirect air carriers" was obviously inadvertent and misleading.

When it passed the Act, Congress was concerned only with direct carriers. Any fear that the surface forwarders might dominate the field of air freight forwarders is inconsistent with the express finding that such control is not inconsistent with the public interest and will not create a monopoly and thereby restrain competition or jeopardize any direct or indirect carrier. As a matter of fact, the board refused to approve the control of air freight forwarders by railroads because of the dominant position such air forwarders would thus secure in relation to independent air forwarders. We think that the interpretation of the statute by the board in order to avoid incongruous result and in order to effectuate the intent of Congress was proper under United States v. American Trucking Ass'ns, 310 U.S. 534, at 542–544, 60 S.Ct. 1059, 84 L.Ed. 1345 and authorities there cited. To the same effect is the recent decision of the Court of Appeals for the Second Circuit in North American Utility Securities Corp. v. Posen, et al., 1949, 176 F.2d 194. We conclude that the board's interpretation of the second proviso of Section 408(b), which makes it inapplicable to the acquisition of control of an air freight forwarder, carries out the intent of Congress and is a reasonable and proper interpretation of that provision binding up-

on this court. National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 130, 64 S.Ct. 851, 88 L.Ed. 1170; Unemployment Compensation Commission v. Aragan, 329 U.S. 143, 153–154, 67 S.Ct. 245, 91 L.Ed. 136.

We have said nothing thus far concerning the Railway Express Agency. The proceedings before the board also involved applications by that company. It furnishes ground facilities and gathers and dispatches air express under contracts between it and air carriers holding certain certificates of convenience and necessity. This indirect air transportation furnished by the agency is authorized by a temporary exemption issued in 1941 pursuant to Section 1(2) of the Act. Railway Express Agency, Inc., Grandfather Certificate, 2 C.A.B. 531. In the present case, the agency requested that it be granted permanent rather than temporary authority and be permitted to handle air freight as well as air express and to use the facilities of noncertificated as well as certificated air carriers. In its order, after continuing the agency's operations in air express under a certificate of exemption, the board directed to the agency to negotiate revised air express agreements containing terms specified by the board and to submit to the board within six months any revised agreements that might be entered into as a result of such negotiations. Petitioners contend that by this order directing the agency to negotiate revised air express agreements, the board exceeded its power.

Petitioners transport air express as well as air freight. The ground facilities used belong to the agency and are used for air express purposes pursuant to contracts between it and the carriers approved by the board. It is contended that the order was entered without due notice to petitioners and is not supported by essential findings; that the original hearing did not contemplate any inquiry into the agreement between the agency and the air carriers; that evidence was received at the hearing regarding existing agreements but that the parties were not notified before or at the time of the hearing that the board intended to consider the contracts previously existing and that the first notice appeared in the examiner's report to which petitioners objected and excepted; that because of these facts, the entry of the order over petitioners' objections denied them due process, in view of the fact that petitioners did not have fair opportunity to present evidence or cross-examine witnesses with respect to the validity of the board's objections to existing agreements or as to the best available method for curing such objections thereto, if valid. Petitioners insist that, though the board has power under the Act to approve or disapprove, it has no power to direct that contracts between the carriers subject to the Act and the agency be renegotiated in accordance with specific terms dictated by the board.

The board contends that the merits of petitioners' claim in this respect are not before the court, because no justiciable controversy between the parties and the board has arisen. We think the board's position sound. Its direction to the agency does not impose any obligation or restraint upon petitioners. It commands nothing of them. It denies them no authority previously granted. It subjects them to no liability, civil or criminal. Thus, in Chicago & Southern Airlines, Inc., v. Waterman Steamship Corporation, 333 U.S. 103, 68 S. Ct. 431, 437, 92 L.Ed. 568, the court said: "Until the decision of the Board has Presidential approval, it grants no privilege and denies no right. It can give nothing and can take nothing away from the applicant or a competitor. It may be a step, which if erroneous will mature into a prejudicial result, as an order fixing valuations in a rate proceeding may foreshow and compel a prejudicial rate order. But administrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as the consummation of the administrative process. United States v. Los Angeles & Salt Lake R. Co., 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651; United States v. Illinois Central R. Co., 244 U.S. 82, 37 S.Ct. 584, 61 L.Ed. 1007; Rochester Telephone Corp. v. United States, 307 U.S. 125, 131, 59 S.Ct. 754, 757, 83 L.Ed. 1147." Inasmuch as peti-

tioners have lost nothing and have had imposed upon them no obligation by the board's direction to the agency and no final order has been entered, we think that no right of petitioners to complain has matured.

The order is affirmed.