**MONARCH TRAVEL SERVICES, INC.,
et al., Plaintiffs-Appellees,**

v.

**ASSOCIATED CULTURAL CLUBS,
INC., et al., Defendants-
Appellants.**

No. 71-2053.

United States Court of Appeals,
Ninth Circuit.

Sept. 15, 1972.

Rehearing Denied Oct. 16, 1972.

Morris Lavine (argued), Los Angeles, Cal., for defendants-appellants.

Charles A. Hobbs (argued), of Wilkinson, Cragun & Barker, Washington, D. C., Irsfeld, Irsfeld, & Younger, Hollywood, Cal., for plaintiffs-appellees.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Eugene Kramer, Asst. U. S. Attys., Los Angeles, Cal., Peter E. Edison, Stephen A. Alterman, Attys., C. A. B., Washington, D. C., amicus curiae.

Before BARNES, MERRILL and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Three travel agents sued on behalf of themselves and other Southern California travel agents to enjoin appellants from arranging charter flights in claimed violation of the Federal Aviation Act. (49 U.S.C. § 1301 et seq.) The district court granted a preliminary injunction, and this appeal followed.[1]

The corporate and individual appellants are closely associated with one another in the conduct of their business; we will refer to them collectively as "ACCI." The appellees will be called "Monarch."

Although ACCI is nominally a social club, its real business is selling to the general public tours and air transportation between Southern California and Europe, on aircraft it charters.[2] It hires planes from direct air carriers, solicits members of the general public to purchase tickets on the flights it arranges, and consolidates groups of passengers to fill the space it purchases. ACCI does not strictly enforce the rule that passengers on its flights be members of ACCI for six months prior to the flight.[3] ACCI makes a substantial profit derived from the excess of the price of the tickets it sells over its cost

in hiring the aircraft. The price of the tickets on ACCI flights is less than the legal tariff for nonchartered flights. ACCI is not an agent for airlines nor for its customers; it is an entrepreneur. It has no certificate of public convenience and necessity from the Civil Aeronautics Board or any exemption from the provisions of the Federal Aviation Act authorizing it to engage in air transportation.

Monarch acts as an agent, not a principal, in booking passage on air carriers and in arranging tours for its clients. Monarch's money is earned from commissions. Monarch lost commissions from clients whose custom was diverted by ACCI's competition.

Three contentions on appeal require discussion: (1) Is Monarch "any party in interest" within the meaning of 49 U.S.C. § 1487(a) and thus endowed with standing to maintain the suit? (2) Is ACCI operating as an "indirect air carrier" within the meaning of 49 U.S.C. § 1301(3) and thus acting in violation of 49 U.S.C. § 1371(a)? (3) Are §§ 1301(3) and 1371(a) and the pertinent CAB regulations defining "charter" unconstitutional restrictions on the right to travel?

Section 1487(a) [4] authorizes the Civil Aeronautics Board ("CAB"), the

1. The United States filed a brief *amicus curiae* in support of the district court's holding that appellants are indirect air carriers under 49 U.S.C. § 1301(3) and that appellant violated 49 U.S.C. § 1371(a) by operating as indirect air carriers without Civil Aeronautics Board authorization.

2. Authorized charters are defined by 14 C.F.R. § 208(6)(b) as follows: "Air transportation . . . where the entire capacity of one or more aircraft has been engaged for the movement of persons and/or property. . . . (2)B. By a person (no part of whose business is the formation of groups . . . or the solicitation or sale of transportation services) for the transportation of a group of persons . . . as agent or representative of such group. . . . "

3. 14 C.F.R. 207.40(b) (2) requires that passengers on a club charter be members of the club "for a minimum of six months prior to the starting flight date."

4. Section 1487(a) provides:
    "If any person violates any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term, condition, or limitation of any certificate or permit issued under this chapter, the Board or Administrator, as the case may be, their duly authorized agents, or, in the case of a violation of section 1371(a) of this title, any party in interest, may apply to the district court of the United States, for any district wherein such person carries on his business or wherein the violation occurred, for the enforcement of such provision of this chapter, or of such

Administrator of the Federal Aviation Agency, their agents, or "any party in interest" to bring suit against a person who violates section 1371(a) of the Act. The district court found that Monarch had suffered economic loss from ACCI's acts in violation of section 1371(a) because some clients who otherwise would have patronized Monarch were diverted to ACCI. The finding is not clearly erroneous. Is one who suffers such loss a "party in interest"? We answer affirmatively. (Northeast Airlines, Inc. v. Nationwide Charters and Conventions, Inc. (1st Cir. 1969) 413 F.2d 335; cf. Sierra Club v. Morton (1972) 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636; Arnold Tours, Inc. v. Camp (1970) 400 U. S. 45, 46, 91 S.Ct. 158, 27 L.Ed.2d 179; Association of Data Processing Service Organizations, Inc. v. Camp (1970) 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184.) Accordingly, Monarch has standing to bring the suit.

ACCI did not have a CAB certificate to engage in air transportation or an exemption. It acted in violation of section 1371(a)[5] if it is an indirect air carrier. Section 1301(a) defines "air carrier" as used in § 1371(a) as "any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation: *Provided,* That the Board may by order relieve air carriers who are not directly engaged in the operation of aircraft in air transportation from the provisions of this chapter to the extent and for such periods as may be in the public interest."

When an organization arranging charter flights operates very much like a carrier, it should be treated as a carrier, regardless of the labels it applies to its business or the existence of incidental features of its program not shared by ordinary carriers. (Educational Student Exchange Program, Inc. (1971) —— CAB —— (Order 71–5–39); United European American Club (1971) —— CAB —— (Order 71–2–33); cf. Las Vegas Hacienda, Inc. v. C. A. B. (9th Cir. 1962) 298 F.2d 430; American Airlines v. C. A. B. (7th Cir. 1949) 178 F. 2d 903; Hacienda Hotels-U. S. Aircoach, Enforcement Proceeding (1958) 26 CAB 372.)

ACCI was in the transporation business thinly disguised as a club. The district court correctly decided that it was an indirect carrier.

ACCI argues that the statutes and regulations it violated are unconstitutional restrictions on the right to travel because not everyone can afford to pay the higher fares on regular flights to Europe. No unconstitutional restraints on anyone's right to travel is imposed by the challenged statutes and regulations. The persons regulated are carriers. Of course, higher air tariffs will limit travel of those who cannot pay the price. A rich man can choose to drive a limousine; a poor man may have to walk. The poor man's lack of choice in his mode of travel may be unfortunate, but it is not unconstitutional.

ACCI's remaining contentions do not have sufficient merit to warrant discussion.

Affirmed.

---

rule, regulation, requirement, order, term, condition, or limitation; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or other process, mandatory or otherwise, restraining such person, his officers, agents, employees, and representatives, from further violation of such provision of this chapter or of such rule, regulation, requirement, order,

term, condition, or limitation, and requiring their obedience thereto."

5. 49 U.S.C. § 1371(a) provides:
"No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation."