**AMERICAN AIRLINES, Inc. v. CIVIL AERONAUTICS BOARD.**

**TRANSCONTINENTAL & WESTERN AIR, Inc. v. CIVIL AERONAUTICS BOARD.**

**EASTERN AIR LINES, Inc. v. CIVIL AERONAUTICS BOARD.**

**UNITED AIR LINES, Inc. v. CIVIL AERONAUTICS BOARD.**

**BRANIFF AIRWAYS, Inc. v. CIVIL AERONAUTICS BOARD.**

**CHICAGO & SOUTHERN AIR LINES, Inc. v. CIVIL AERONAUTICS BOARD.**

**DELTA AIR LINES, Inc. v. CIVIL AERONAUTICS BOARD.**

**NORTHWEST AIRLINES, Inc. v. CIVIL AERONAUTICS BOARD.**

Nos. 10374, 10387, 10388, 10437, 10439–10442.

United States Court of Appeals District of Columbia Circuit.

Argued March 28, 1951.

Decided Sept. 27, 1951.

418

James K. Crimmins, New York City, for petitioner Transcontinental & Western Air, Inc., in No. 10387. William Caverly, Washington, D. C., also entered an appearance in that case.

Charles A. Moye, Jr., Atlanta, Ga., of the Bar of the Supreme Court of Georgia, pro hac vice, by special leave of Court, with whom E. Smythe Gambrell and W. Glen Harlan, Atlanta, Ga., were on the brief, for petitioner Eastern Air Lines, Inc., in No. 10388.

Paul M. Godehn, Chicago, Ill., with whom James Francis Reilly, Washington, D. C., was on the brief, for petitioner United Air Lines, Inc., in No. 10437. Joseph A. Reilly, Washington, D. C., also entered an appearance in that case.

Philip S. Peyser, Washington, D. C., with whom Hubert A. Schneider, Washington, D. C., was on the brief, for petitioner Braniff Airways, Inc., in No. 10439, for petitioner Chicago & Southern Air Lines, Inc., in No. 10440, and for petitioner Delta Air Lines, Inc., in No. 10441.

Seth W. Richardson, C. Edward Leasure and Herman F. Scheurer, Jr., of Washington, D. C., were on the brief for petitioner Northwest Airlines, Inc., in No. 10442.

Warren L. Sharfman, Attorney, Civil Aeronautics Board, Washington, D. C., with whom Mr. Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, Washington, D. C., was on the brief, for respondent. Oral D. Ozment, Attorney, Civil Aeronautics Board, and William D. McFarlane and Charles H. Weston, Department of Justice, Washington, D. C., also entered appearances for respondent.

William E. Miller, Washington, D. C., with whom Stanley C. Morris, Charleston, W. Va., and Stephen Ailes, Washington, D. C., were on the brief, for intervenor Slick Airways, Inc. Laidler B. Mackall, Washington, D. C., also entered an appearance for Slick Airways, Inc.

Norman L. Meyers, Washington, D. C., with whom Elmer E. Batzell, Washington, D. C., was on the brief, for intervenor The Flying Tiger Line, Inc.

Albert F. Beitel, Washington, D. C., with whom George Morris, Washington, D. C.,

Daniel M. Gribbon, Washington, D. C., with whom Howard C. Westwood and Paul Donald Lagomarcino, Washington, D. C., were on the brief, for petitioner American Airlines, Inc., in No. 10374.

was on the brief, for intervenor U. S. Airlines, Inc.

Elwood H. Seal, Washington, D. C., submitted on the brief for intervenor Airnews, Inc.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

These are petitions to review [1] an order of the Civil Aeronautics Board.

Prior to July, 1946, the Board received a number of applications for certificates of public convenience and necessity which would grant authority to engage in the transportation of property only, by air between points in continental United States. Thirteen such applications were set for hearing in a consolidated proceeding known as the Air Freight Case.[2] Several certificated air carriers intervened in opposition to the applications. Hearings proceeded before two examiners from November, 1946, to January, 1947. On March 12, 1948, the examiners issued a report, which is approximately 400 printed pages in length and contains extensive and detailed findings of fact. The examiners recommended that six of the applicants be granted certificates for a three-year period.

Meantime, on May 5, 1947, the Board had adopted a regulation (Sec. 292.5 of its Economic Regulations) pursuant to Section 416(b) of the Act,[3] the effect of which was to create a classification of "noncertificated cargo carriers" and to exempt them for a limited time from certain requirements of the Act, so as to authorize such carriers to engage immediately in regularly scheduled common carrier transportation of property, pending decision on the applications for certificates. Three of the applicants were authorized by letters of registration to operate under this regulation. The Board directed the freight carriers (those registered and those not registered) to file special reports reflecting their operations, and thereafter reopened the record for the receipt of detailed data from the applicants and the intervenors as to the results of their freight operations. Hearing was had after the reopening, and the record thus made was certified to the Board.

Prior to this reopening of the record exceptions had been filed to the examiners' report, briefs had been filed, and oral argument, for five days, had been heard by the Board. Briefs were also filed after the reopened hearing. The Board, by a three-to-two vote, adopted a tentative opinion and tentative order, which provided that temporary certificates would be issued to four applicants for five years between specified points. Exceptions were filed, and the Board heard oral argument, this time for three days, on the exceptions. The Board then adopted, by a three-to-two vote, a final opinion and order, which in general followed the tentative opinion. This is the order here and now under review.

The record before us is extensive. More than 30,000 pages appear in the transcript of record, and the printed joint appendix contains 6,000 pages. There were hearings before examiners and twice before the Board, and briefs likewise. The final opinion of the Board is some 70 printed pages long. We have nineteen briefs before us. We have examined, analyzed and summarized the arguments thus presented. They are stated in different ways and in detail. However, the major contentions resolve easily into three propositions: (1) the Board misconceived its statutory function, claiming a unique power to disregard the evidence of record; (2) the findings are inadequate; and (3) the findings are without substantial support in the record.

The statements of the Board which petitioners take as the text for their first and principal quarrel are these:

"In view of the contention which has been advanced that the factual evidence of record is not sufficiently substantial to justify the certification of any all-cargo carriers, it is essential in disposing of the present case that we keep in mind the nature of the basic issue involved. That issue

---

1. Sec. 1006 of the Civil Aeronautics Act of 1938, 52 Stat. 1024, as amended, 49 U.S. C.A. § 646.

2. C. A. B. Docket No. 810, et al.

3. 52 Stat. 1004, as amended, 49 U.S.C.A. § 496(b).

is primarily promotional in character and relates to developmental rather than purely regulatory purposes. This characteristic of the statutory scheme serves to distinguish the Civil Aeronautics Board from judicial tribunals and even from many regulatory bodies. * * *

\* \* \* \* \* \*

"Considered in the light of the above statement and the developmental nature of the function involved in the issue before us, we cannot agree with the contention that the issue of public convenience and necessity in the present case is to be resolved solely upon the basis of past and current facts whose weight must be strictly weighed as in the adjudication of a factual issue in a court of law."

Petitioners say that that statement is the assertion by the Board of a unique power, that it is a declared refusal to be guided by "evidence of record", that it is an assertion of power to base an adjudication upon matters not of record.

The project under consideration by the Board was cargo-only transportation by air. It was a new project, conceived largely as the result of wartime experience. It involved aircraft of a new design, promotion by new methods, new arrangements of schedules, and the new paraphernalia needed for a new venture. Part of what was needed was known; part of it was unknown. Some of the applicants had operated this new type of business for a short period of time under the exemption order.

In the first place, Congress expressly directed that the Board consider, as being in the public interest and in accordance with the public convenience and necessity, the development, encouragement and promotion of air transportation, air commerce, and civil aeronautics.[4] Whatever belittling significance may be attached to the fact that those provisions were under a title "Declaration of Policy", they are in the statute, are peremptory, and are as much an enactment by the Congress as is any other section of the statute. Obviously development, promotion and encouragement are matters of foresight, not products of unblended hindsight. In the second place, the regulatory function, certainly in so far as it includes permissive certificates, is a forward-looking function, as any examination of regulatory measures easily demonstrates. In that respect it differs markedly from a purely judicial or quasi-judicial determination of present or past rights. Much confusion has crept into the subject by failure to observe that distinction. When a regulatory action contemplates a proposed development, new, not existing, a type of judgment is required which is wholly absent from the mere evaluation of past facts to ascertain a present or past fact. It is in the exercise of that sort of judgment that the much discussed expertise of administrative agencies finds its greatest value. Here is the field of uncertainties, imponderables and estimates. This is where the rule that a conclusion within the realm of rational deduction or inference stands despite differences of opinion, has its greatest applicability.

We had the same general problem before us in United Air Lines v. Civil Aeronautics Board,[5] and the Supreme Court adverted to it in United States v. Detroit & Cleveland Navigation Co.[6]

The public convenience and necessity for which regulatory agencies issue certificates are the convenience and necessity of the future. The needs of yesterday require no fulfillment if they be not the needs of tomorrow. They may require recompense, but they need no regulation. Every new bus route, new airplane service, new radio station, new stock issue, new pipe line, new power project, and so on, seeks its permissive certificate upon the basis of future possibilities. If past or present events are indicative of such probabilities, they are useful as indices. But surely the future is not limited to or by the past. An application for a new bus route could not be denied

4. Sec. 2 of the Act, 52 Stat. 980, as amended, 49 U.S.C.A. § 402.

5. 1946, 81 U.S.App.D.C. 89, 155 F.2d 169.

6. 1945, 326 U.S. 236, 66 S.Ct. 75, 90 L. Ed. 38.

because there has been no bus service on that route; and the same axiom must apply to air freight.

There is nothing peculiar about regulatory functions in that respect. It is a common practice of business. In business the principal usefulness of the past to the present is in foretelling the future. The merchant buying inventory, the utility executive authorizing plant capacity, the highway engineer laying out streets, the investor purchasing stocks and bonds, the capitalist establishing a new hotel, the financier arranging a corporate capital structure, broadcasting companies seeking licenses for television, all look to the future. The veriest tyro knows that the prices of stocks on stock exchanges are determined by men's estimates of future events; last year's earnings are of interest only to the extent that they indicate what next year's earnings will be. It is, of course, true that if a business be long-established and stable its future can be fairly estimated by reference to its past. And it is also true that if the past shows a trend, that past trend can often be accepted as a dependable index of the future.

Since regulatory functions must necessarily contemplate the future, the law which is involved in those functions must be realistic enough to permit that scope. So, when a prospective rule is required to be upon evidence, that evidence must be construed to include estimates, or forecasts, or opinions, on future events. At the same time, governmental permissions for the future cannot be fashioned from pure fantasy, speculation devoid of factual premise. Public convenience and necessity in the sense of these statutes has a hard core of factual possibility, which can be ascertained and evaluated only upon the basis of present and past events and conditions. So the function of the agencies to which Congress has delegated these responsibilities is to examine the relevant past and present and then to exercise a rational judgment upon that data to ascertain the public convenience and necessity in the reasonably foreseeable future.

In concluding its opinion the Board used this complete paragraph, from which we have heretofore quoted in part:

"Considered in the light of the above statement and the developmental nature of the function involved in the issue before us, we cannot agree with the contention that the issue of public convenience and necessity in the present case is to be resolved solely upon the basis of past and current facts whose weight must be strictly weighed as in the adjudication of a factual issue in a court of law. Our decision must also take into account and give appropriate weight to broad considerations of future welfare related to the development of a new type of air commerce which until a comparatively recent time has received little attention. Such an approach must necessarily be predicated upon future estimates as well as present facts for it is keyed to future goals and an effort to envisage the shape of things to come."

■ We find no substantial error in the statements of principle which guided the Board's consideration and determination. It used quantities of past and present data, but its problem lay in the future and it formulated a conclusion upon that problem, as it had to do, by estimating in general terms that future.

■ Petitioners contend next that the Board's findings are inadequate. We have examined them with care, and they seem to us to be ample to support the conclusions which the Board reached, which conclusions in turn appear to include all those essential to a valid disposition of the matter.

■ Petitioners' next principal contention is that no substantial evidence in the record supports certain of the Board's findings of fact. Principally this attack is upon the Board's finding that there is a potential domestic air-freight traffic of not less than one billion ton-miles annually. That finding came at the conclusion of a long series of findings as to various sorts of commercial movement of property, by express and freight, the experience of the applicants under the exemption order, potential mar-

kets, the testimony of various witnesses, probably available air freight, and similar data. The full paragraph which the petitioners so vigorously attack is as follows:

"On the basis of the facts of record relating to traffic and air freight potential, we conclude that even in the absence of unusual technical advances which would permit substantially lower rates, there is an existing potential domestic traffic for air freight of not less than one billion ton-miles annually. The realization of that potential and its translation into actual air freight traffic is, of course, subject to many variables, such as economic factors, individual effort, competitive action, etc. While the potential is great, it will require intensive development to achieve a substantial penetration of it."

This opinion would be expanded far beyond any reasonable bounds if we should attempt to point to all the evidence in this record which seems to us to support the finding in respect to air freight potential. Many witnesses and many exhibits were introduced upon the subject. A wide disparity between the estimates was shown, based largely upon differences in possible rates. A potential of more than five and a half billion ton-miles at a rate of 12 cents was vigorously supported by one apparently well-qualified witness, and a potential of about four billion at rate of 15 cents by another. All sorts of charts and statistical projections were introduced. A dozen or more transportation economists and aviation consultants testified. The Board made a series of findings as to background, as to the operation under the exemption order, as to the potential market, and as to competition. As to the potential market, it found a wide divergence of opinion. The intervenors offered no evidence on the point but vigorously attacked the conclusions presented by others. The Board noted the evidence as to types of freight susceptible to air carriage, the various estimates as to air freight potential, the statistics as to railway express and rail freight, the various studies made by industries as to air-cargo

potential in different commodities, and finally the rate-volume comparisons between air freight and competing surface transportation. We think there was ample evidence in the record to support the finding.

Petitioners discuss "potential" as though the Board were finding a presently available air-freight traffic. Of course it was not doing so. It was indicating the substantial amount of such traffic which it believed could and, if adequately sought and promoted, would be developed. The substance of this undeveloped industry is an element of public convenience and necessity in any economy of progress.

Petitioners insist that, because the Board did not confine itself to a mathematical projection of the experience of the applicants under the exemption order, it "rejected" or "ignored" that evidence. They discussed the air-freight potential as though it were air freight the availability of which could be demonstrated with mathematical precision by reference to past or present facts. Of course the finding as to air-freight potential did not purport to be either of these. As a matter of fact, we do not see why a precise figure of air-freight potential need have been found in order to support the grant of the temporary certificates. Any potential of comparative substantiality would have supported the experimental grant. The development of the movement of property by air is not to be thwarted by the fact that nobody can demonstrate with mathematical precision how much of a specified type of property would move by air facilities not yet developed and at unknown rates.

Petitioners make a number of other contentions of various sorts which it is unnecessary to discuss. They also attack the Board's findings as to each applicant to which the Board granted a certificate. We think those findings are sufficient and are supported by ample evidence.

The order of the Board will be and is affirmed.