**DELTA AIR LINES, Inc., et al.,**
**Petitioners,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent.**

**No. 16009.**

United States Court of Appeals
Fifth Circuit.

July 19, 1957.

W. Glen Harlan, Charles A. Moye, Jr., and E. Smythe Gambrell, Atlanta, Ga., Howard C. Westwood, Peter S. Craig and Charles H. Murchison, Washington, D. C., John T. Lorch and Henry L. Hill, Chicago, Ill., Richard S. Maurer and Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., and James K. Crimmins, Melvin D. Goodman and Chadbourne, Parke, Whiteside & Wolff, New York City, Francis H. McAdams and Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for petitioners.

Elmer E. Batzell, Stephen Ailes, Morris Chertkov, Asst. Chief, Litigation and Research Div., Franklin M. Stone, Gen. Counsel, John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board,

O. D. Ozment, Chief, and Robert L. Park, Atty., Litigation and Research Division, Washington, D. C., Victor R. Hansen, Asst. Atty. Gen., Daniel M. Friedman, Atty., Dept. of Justice, Gerald F. Krassa, Atty., Civil Aeronautics Board, Washington, D. C., and Kenneth DeMattei, Atty., Civil Aeronautics Board, San Francisco, Cal., for respondent.

Norman L. Meyers, Washington, D. C., for intervenor The Flying Tiger Line Inc., Meyers & Batzell and Sylvester P. Meyers, Washington, D. C., of counsel.

Clarence M. Mulholland, Toledo, Ohio, Edward J. Hickey, Jr., James L. Highsaw, Jr., and Harry A. Bowen, Washington, D. C., for intervenor Riddle Airlines, Inc., Mulholland, Robie & Hickey, and Bowen & Scoutt, Washington, D. C., of counsel.

William E. Miller, Stephen Ailes, Robert J. Corber, Washington, D. C., for Slick Airways, Inc., Steptoe & Johnson, Washington, D. C., of counsel.

Coates Lear, Washington, D. C., for intervenor Aaxico Airlines, Inc. (Formerly American Air Export and Import Co.).

Before BORAH, RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Eight air carriers, holding permanent certificates of public convenience and necessity authorizing the transportation of persons, property and mail, seek review of orders of the Civil Aeronautics Board which issued temporary certificates to four "cargo carriers" for the transportation of property and mail.[1] The temporary certificates so issued authorize the transportation of all types of property, which would include both air freight and air express, for a period of five years, and authorize the transportation of all categories of mail for a one year experimental period [2] on a non-subsidy basis.[3]

The Board proceedings were an outgrowth of a decision made in 1949, inaugurating the air freight experiment by temporarily certificating for five years four air carriers for the transportation of property only, not including air express.[4] In the proceedings now under review, the Board, upon the basis of an extensive record, made findings and conclusions, reflected in some 340 pages of opinions and orders, to the effect that the public convenience and necessity require the continuation and expansion of the air freight experiment. The Board's basic decision is not seriously challenged in so far as it is limited strictly to air freight, but petitioners attack three aspects of the Board's determination: (1) they contend that the Board unlawfully granted air express authority to such cargo carriers; (2) they object to the experimental mail authorizations; (3) they challenge the grant to two of the cargo carriers of the right to provide "intra-area service," that is local service generally between all points on their certificated routes.

Air transportation, as everyone knows, is of recent origin. It was natural, therefore, that the Civil Aeronautics Board should be vested with more promotional and developmental responsibilities than those possessed by any other similar regulatory body.[5] Pursuant to

1. Jurisdiction of such review is vested in this Court by Section 1006 of the Civil Aeronautics Act of 1938, as amended, 52 Stat. 1024, 49 U.S.C.A. § 646, and by Section 10 of the Administrative Procedure Act of 1946, 60 Stat. 243, 5 U.S.C.A. § 1009.

2. Each of the cargo carriers has filed application for renewal of its mail authority which will continue in effect pending renewal proceedings by virtue of Sec. 9(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1008(b).

3. Sec. 406(b) of the Civil Aeronautics Act 49 U.S.C.A. § 486(b), authorized the Board to fix rates for the transportation of mail, taking into consideration not only just compensation for carrying the mail, but also the "need" of each such carrier.

4. Air Freight Case, 10 C.A.B. 572, affirmed sub nom. American Airlines, Inc., v. Civil Aeronautics Board, 89 U.S.App.D.C. 365, 192 F.2d 417.

5. Thus, Section 2 of the Civil Aeronautics Act of 1938, 52 Stat. 973, as amended,

such responsibilities, the Board has experimented widely in authorizing new and largely uncharted operations for temporary periods, and its power so to do has been judicially affirmed.[6]

In the original Air Freight Case, supra, the Board denied the new cargo carriers authorization to carry air express (10 C.A.B., at p. 611):

"Each certificate of public convenience and necessity issued in this proceeding shall be subject to the condition that the holder thereof shall not carry property [air express] shipped by the Railway Express Agency, Inc. * * *"

As that exclusion indicates, "air express" has signified property originating with the Railway Express Agency, while "air freight" has described property originating with the carrier or with freight forwarders other than Railway Express. The Board has said that "The express business had its inception as a personalized service operating at premium rates over the faster and more dependable schedules of passenger trains." Air Freight Forwarder Case, 9 C.A.B. 473, 488 (1948).

Prior to the enactment of the Civil Aeronautics Act of 1938, and for some years thereafter, the commercial air cargo business was limited to small shipments. The air carriers had no facilities for ground handling, including pickup and delivery. Railway Express had such facilities. It became an indirect carrier and the airlines merely the transporting medium for an agreed compensation.[7]

As the Examiner pointed out:

"The Board's prohibition against the carriage of air express may be traced to the historical distinction between air freight and air express. During the period 1936 to 1943 a contract between all of the passenger airlines and the Railway Express Agency gave the latter the exclusive right to originate 'air express' which by definition included all property other than passengers, baggage and mail. In 1943 the contract was modified by eliminating the exclusive feature and in 1944 American Airlines filed the first air freight tariff. From that date on, a distinction between air express and air freight has existed with air express being generally recognized

---

49 U.S.C.A. § 402, provides the following "Declaration of Policy":
"In the exercise and performance of its powers and duties under this chapter, the Board shall consider the following, among other things, as being in the public interest, and in accordance with the public convenience and necessity—
"(a) The encouragement and development of an air-transportation system properly adapted to the present and future needs of the foreign and domestic commerce of the United States, of the Postal Service, and of the national defense;
"(b) The regulation of air transportation in such manner as to recognize and preserve the inherent advantages of, assure the highest degree of safety in, and foster sound economic conditions in, such transportation, and to improve the relations between, and coordinate transportation by, air carriers;
"(c) The promotion of adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discriminations, undue preferences

or advantages, or unfair or destructive competitive practices;
"(d) Competition to the extent necessary to assure the sound development of an air-transportation system properly adapted to the needs of the foreign and domestic commerce of the United States, of the Postal Service, and of the national defense;
"(e) The regulation of air commerce in such manner as to best promote its development and safety; and
"(f) The encouragement and development of civil aeronautics."

6. See, e. g., American Airlines, Inc., v. Civil Aeronautics Board, 87 U.S.App.D.C. 365, 192 F.2d 417, 420; Braniff Airways v. Civil Aeronautics Board, 79 U.S.App. D.C. 341, 147 F.2d 152; American Airlines v. Civil Aeronautics Board, 7 Cir., 178 F.2d 903; American Airlines, Inc., v. Civil Aeronautics Board, 97 U.S.App.D.C. 324, 231 F.2d 483; Los Angeles Helicopter Case, 8 C.A.B. 92.

7. See Railway Express Agency Grandfather Certificate, 2 C.A.B. 531 (1941).

, as all property originated and handled by the Railway Express Agency and air freight as property originated and handled by the carriers themselves."

World War II heralded the advent of larger aircraft capable of transporting cargo of nearly all kinds. Thus the distinction between "air express" and "air freight" has its roots more in history than in law or in fact. The identical package can move either as air express or as air freight.

■ Section 401(a) of the Civil Aeronautics Act, 49 U.S.C.A. § 481(a) provides that no air carrier shall engage in air transportation unless it has a certificate therefor issued by the Board. Subdivision (d) (2) of the same section provides:

"(2) In the case of an application for a certificate to engage in temporary air transportation, the Board may issue a certificate authorizing the whole or any part thereof for such limited periods as may be required by the public convenience and necessity, if it finds that the applicant is fit, willing, and able properly to perform such transportation and to conform to the provisions of this chapter and the rules, regulations, and requirements of the Board hereunder." 49 U.S.C.A. § 481(d) (2).

Section 1(21) of the Act, 49 U.S.C.A. § 401(21) defines air transportation to "mean the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft." Thus, under the Act, air express and air freight are not different classes of traffic requiring separate authority for each class, but both are included within the "property" authorization. The Board has consistently construed the term "property" as embracing all types and kinds of property, including air express.[8]

8. See Air Freight Case, 10 C.A.B. 572, 578, aff'd American Airlines, Inc., v. Civil Aeronautics Board, 89 U.S.App.D.C. 365, 192 F.2d 417. Indeed, the certifi-

The Act did not require a separate showing of public convenience and necessity in the form of establishing additional service needs. Rather, the issue was whether the Board in the exercise. of its general authority under Section 401(f) of the Act, 49 U.S.C.A. § 481 (f), to impose such reasonable terms, conditions and limitations as the public interest might require, should continue to deny to the cargo carriers the right to carry property shipped by the Railway Express Agency.

The Board was unanimous in its view that that restriction should be removed:

"As to the merits of the air express issue, no one has advanced any cogent reason why the authority to carry air express in aircraft operated by all cargo carriers should be any different than their authority to carry other types of cargo. Railway express shipments, by their very nature, are as readily adaptable to being transported in cargo planes as is ordinary air freight. Air express and air freight both show similar patterns of concentration of movement during the evening hours as contrasted with the concentration of passenger traffic during the day. Schedules designed to accommodate air freight will therefore prove adaptable for the carriage of air express.

"It is true, as pointed out by the intervening carriers, that in the original Air Freight Case, decided in 1949, we specifically prohibited the air freight carriers from carrying air express generated by Railway Express Agency. Circumstances at that time impelled us to conclude that the air express potential was not sufficient to warrant competition with the certificated combination passenger and cargo carriers since such competition might result in substantial diversion from these

cates of the petitioners themselves simply authorize the transportation of persons, property, and mail, without specific reference to air express.

carriers. At that time the combination carriers were operating under subsidy mail rates and the air transportation industry was not as healthy as it is today. None of the certificated combination carriers had achieved the financial stability they enjoy today, due in part to the great upsurge in passenger movement of the last few years. Under present circumstances, the reasons which persuaded us to impose the air express restriction in 1949 are no longer persuasive."

■ We conclude that the air express authorization to each of the four cargo carriers rests on adequate findings supported by substantial evidence. .

■ The mail authorization presents a closer question upon which one of the members of the Board dissented and another agreed only with the result. We hold, however, that the mail authorization rests on adequate findings supported by substantial evidence.

The main thrust of petitioners' attack upon the mail authority is that the majority of the Board relied so heavily upon the representations of the Postmaster General in the form of brief and argument to sustain a need for experimental mail authority. True, those views were not in the form of testimony subject to the right of cross-examination. As statements of policy, however, by the officer charged with the responsibility for moving the mails, the views of the Postmaster General, while by no means controlling on the Board, were entitled to most serious consideration.

There was direct testimony that the cargo carriers were willing and able to carry air mail at cheaper rates than those now paid the airlines, there were estimates of the effect of rate decreases on the potential market for air mail. It was shown that air mail reaches its peak demands at night when all-cargo planes, rather than passenger planes, are flying at their greatest frequency. The mail authority granted was only for a one-year experimental period, and the purpose of that experiment itself was to prove or disprove the inescapable mere judgment and prophecy concerning the future of a new and uncharted operation. The authorization of that experiment came well within the broad promotional and developmental authority vested in the Board.

In addition to finding a need for the mail service, the Board found that the additional revenue accruing to the cargo carriers will give added support to their cargo operations and will be in the public interest. The petitioners, during their developmental period, have been nurtured and helped by the Board through the exclusive grant to them of mail and express authority. The Board found that they were now in such secure financial position, with their income so largely derived from passenger transportation, that the probable extent of diversion of air express and mail from the petitioners to the cargo carriers would not seriously affect the petitioners but would help the cargo carriers perform their main function.

An unusually strong case was made for the renewal of air freight authority in terms of opening new markets, making possible new locations for industry and new distribution procedures, and maintaining for the national defense a growing fleet of cargo planes ready at a moment's notice for use as military transport aircraft. While the public interest alone should govern the Board in the exercise of its duties and responsibilities, there was adequate basis in the evidence for the Board's conclusion that the added support to the cargo carriers from the mail and express authority will be in the public interest.

The petitioners urge that the question of whether two of the cargo carriers, Aaxico and Riddle, should obtain "intra-area" authority, that is service between points within the same geographical area or locality, in addition to "inter-area" authorizations was not in issue in the Board proceeding, and hence, that petitioners were denied a fair hearing. Subsequent to the pre-hearing confer-

ence, Aaxico filed an application requesting intra-area authority. Riddle's amended application requested "such intra-area air service as the Board may find is required by the public convenience and necessity." In its supplemental opinion on reconsideration, the Board adequately answered this objection:

"It is clear. that this issue was within the scope of the present proceeding. As we pointed out in our original decision, Aaxico's application specifically requested point to point authority and Riddle's amended application was broad enough to include the issue of intra-area service. In addition, the application filed by U. S. Airlines in Docket No. 4382 related solely to the question of operations between points in the same area. The Board's Order (No. E–8316), which subsequently consolidated all of these applications in Docket No. 4770, et al., imposed no restriction on the intra-area service issue raised by the applications. Nor did the Examiner, at the hearing, exclude testimony with respect to this type of service. Furthermore, a re-examination of the statement,[1] filed by some of the intervening carriers objecting to the consolidation of these applications, emphasizes our conclusion that the parties to the proceeding had adequate notice of the fact that intra-area service was in issue as to the North-South applicants. In view of all of the circumstances, we reaffirm our original conclusion that service between points in the same area was in issue in the present proceeding.

"[1] United, in its Statements to the Board on Feb. 23, 1954, with respect to Consolidation of Applications and the Inclusion of Certain Issues, objected to the consolidation because, inter alia, Aaxico and U. S., in its application in Docket No. 4382, were requesting authority to operate between points in the same area which would expand the scope

of the proceeding. Likewise, Delta, in its letter of Feb. 24, 1954, to the Board objecting to the consolidation pointed out the fact that Aaxico was requesting intra-area authority. It was indicated that copies of these statements were sent to all parties."

We do not find it necessary to discuss the various other contentions of the several parties and intervenors. The orders of the Board are

Affirmed.