**CONSOLIDATED FLOWER SHIP-
MENTS, Inc.—BAY AREA**

v.

**CIVIL AERONAUTICS BOARD et al.**

No. 13727.

United States Court of Appeals,
Ninth Circuit.

June 9, 1954.

Rehearing Denied Aug. 3, 1954.

See also 205 F.2d 449.

Antonio J. Gaudio, South San Francisco, Cal., for petitioner.

Stanley N. Barnes, Asst. Atty. Gen., Ralph S. Spritzer, Special Asst. to Atty. Gen., John H. Wanner, Associate General Counsel, Civil Aeronautics Board, Emory T. Nunneley, Jr., General Counsel, James L. Highsaw, Jr., Chief, Litigation & Research Division, O. D. Ozment, Henry M. Switkay, Attys., Civil Aeronautics Board, Washington, D. C., for respondent, Civil Aeronautics Board.

Paul T. Wolf, San Francisco, Cal., for Airborne Flower and Freight Traffic, Inc., respondent.

Before HEALY, ORR and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

In the San Francisco Bay area the growing and marketing of flowers is a substantial business. Air freight transportation has enabled the growers in recent years to sell their flowers in markets formerly denied them.

This case is concerned with some of the aspects of the interstate shipment by air of flowers.[1] The grower, of course, could do business directly with an air carrier without using an air freight forwarder, but if he did so he would be shipping his commodity without the advantage of the better rates one can obtain with a larger bulk. Freight forwarders have been long familiar in the rail and trucking industries, gathering small lots

[1] No problems are presented here as to the accommodation of federal and state authority in the field of regulation or how far the United States may be ultimately entitled to go in the regulation of purely intrastate shipments through the navigable air space.

together for shipment and shipping the aggregate at the better rates available for quantity, thus making money for themselves and offering an attractive money saving service to customers. Freight forwarders or consolidators are finding they can render a service in connection with air freight which is attractive to shippers and especially so to growers and shippers of fresh flowers. The conventional type of consolidator-forwarder would seem to be the respondent, Airborne Flower and Freight Traffic, Inc., which has submitted itself to regulation by the Civil Aeronautics Board under the Civil Aeronautics Act and regulations issued thereunder.

Consolidated Flower Shipments, Inc., Bay Area,[2] is a cooperative shipping organization which has a membership and not a corporate stock base. It was started as a plain California corporation, but was later specially reincorporated as a non-profit cooperative association under the Agricultural Code of the State of California. Its exclusive business seems to be to accomplish in the shipment of flowers what the conventional freight forwarder generally does. However, the method of handling charges for its members (to whom its service is restricted) is somewhat different. The petitioner cooperative (Bay Area) has a uniform advance charge for the pick-up of the boxes of flowers from members. This charge covers the drayage to the local airport. If savings are effected by consolidating shipments, which ordinarily at destination requires breaking bulk, the saving, or some of it, accrues to the member-shipper.

From the record, it appears that the petitioning cooperative (Bay Area) has rendered a popular service, now controlling over half of the shipments of flowers out of the San Francisco Bay area.

Nothing has been suggested that would prevent the petitioner herein from taking the necessary steps required by the Civil Aeronautics Act and the regulations of the Civil Aeronautics Board to qualify as a freight forwarder.[3] But it doesn't want to qualify, obtain a proper certificate or authority to do business and be regulated.[4]

Petitioner is not confronted with such a problem as getting certificated to run another commercial passenger service in-

2. The region, "San Francisco Bay area," hereinabove referred to, is not to be confused with the name of the petitioner, "Consolidated Flower· Shipments, Inc.— Bay Area," a California corporation, which is referred to in the opinion as "Bay Area."

3. 49 U.S.C.A. 401 provides:
"As used in this chapter, unless the context otherwise requires—

\*   \*   \*   \*   \*

"(2) 'Air carrier' means any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation: Provided, That the [Board] may by order relieve air carriers who are not directly engaged in the operation of aircraft in air transportation from the provisions of the Act to the extent and for such periods as may be in the public interest."

\*   \*   \*   \*   \*

Under the foregoing, the Civil Aeronautics Board has issued regulations 14 C.F.R. 296, which partially exempt air freight forwarders from the provisions

of the Civil Aeronautics Act. However, the regulations set up a system for registration of air freight forwarders and impose certain duties, principal obligations thus created being the carrying of public liability, property damage and cargo insurance and the filing of schedules of tariffs. The regulations would appear to permit always one more to enter the field. It would seem that if the cooperative (Bay Area) would file its original application (together with the 19 copies thereof actually required by the Civil Aeronautics Board) for a letter of registration and then proceed to comply with the regulations of the Civil Aeronautics Board, it would be ready to operate under the Act.

4. It is immaterial to the decision of the case, but one may assume probably the reason the cooperative (Bay Area) does not want to qualify as an air freight forwarder is that under the regulations of the Civil Aeronautics Board the cooperative would have to establish and file tariffs.

to Denver or Kansas City, or certificated to carry passengers nonstop, San Francisco to New York. Presently, in indirect carriage, there would seem to be no limit on the number who can qualify and operate as air freight forwarders.

The Civil Aeronautics Board initiated its own investigation on April 9, 1951, to ascertain if the cooperative (Bay Area) has engaged or is engaging indirectly in air transportation, not being legally qualified to do so. Then followed before the Board a complaint against the cooperative filed by the respondent, Airborne Flower and Freight Traffic, Inc. The two matters were consolidated for hearing before the Board and resulted eventually in a single order by the Board that the cooperative (Bay Area) should cease and desist from engaging indirectly in air transportation in violation of the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq.

The cooperative (Bay Area) brings the Board's order here for review.

■ This court cannot reappraise the evidence, but may look to see if there was substantial evidence to support the order of the Civil Aeronautics Board, may review the Board's legal conclusions and may see if the Board abused its discretion. The petitioner (Bay Area) complains that the Board's order, in saying the equivalent of "stop breaking the law," is too general. This last contention may be examined here.

There seems to be little dispute as to the factual character of plaintiff's operation. But is it inside or outside the ambit of regulation by the Civil Aeronautics Board?

In many places in the law, cooperatives, especially agricultural cooperatives, have been given special consideration. It is not for us to decide here, but it seems that if the petitioner (the cooperative) were operating in the field of rail or motor transportation, it would be exempt from regulation by the Interstate Commerce Commission under the Interstate Commerce Act. 49 U.S.C.A. § 1002. See U. S. v. Pacific Coast Whole-

salers' Ass'n, 338 U.S. 689, 70 S.Ct. 411, 94 L.Ed. 474. But no special exception for cooperatives or agricultural freight forwarders appears in the Civil Aeronautics Act.

It is the function of this court to read the Civil Aeronautics Act as it is. The Congress can make exceptions.

Freight forwarders in interstate commerce in the rail and motor fields were subjected to regulation by the Interstate Commerce Commission in 1942. 49 U.S.C.A. § 1001 et seq. See Acme Fast Freight, Inc., v. Chicago, M. St. P. & P. R. Co., 2 Cir., 166 F.2d 778. The 1942 act as amended (amendments to Interstate Commerce Act) expressly grants certain agricultural cooperative associations and non-profit associations who are consolidating or distributing freight specific exemption from regulation. No contention is here made that the United States does not have the power to regulate freight forwarders in the rail and motor industries under the Interstate Commerce Act or the air forwarder under the Civil Aeronautics Act, if the forwarder's operation is sufficiently "public" in nature.

But, says the cooperative (Bay Area), the evidence does not support any finding that it was a "public" carrier or forwarder. The service of the cooperative seems to have been open to all who would join. There was very active solicitation of memberships and, through memberships, business. No special equipment for the operation (which sometimes helps make a carrier a private one instead of a public one) was involved. An excellent analysis of what makes a cooperative "public" in character is found in Natural Gas Service Co. v. Serv-Yu Cooperative, 70 Ariz. 235, 219 P.2d 324.

■■ The evidence before the Board reasonably supports upon a substantial basis its finding of the public nature of the cooperative's business and that it was engaged indirectly in air carriage.

Although the cooperative was set up as a corporate entity, the Board now seems to ask this court especially to note

that the cooperative (Bay Area) may be the alter ego of one of its principal officers. Then the petitioner apparently would have the court pay no attention to the corporate entity and handle the case as the alter ego of a few producers who decided to get together and combine their shipments for a season. The court, however, takes the cooperative company for what it is, a separate legal entity.

No exception having been made by the statute or by the Board under its authority to exclude entirely certain aspects of air shipments from its regulation, the Board was within its power and did not abuse its discretion herein in requiring the cooperative, in effect, to submit itself to the special limited regulations it has set up for air freight forwarders.

 While the Board's order of February 5th, 1953, in saying "cease and desist from engaging indirectly in air transportation in violation of Section 401 (a) of the [Civil Aeronautics] Act" is the equivalent of saying "stop violating the law," yet the whole record (complaint, investigation and opinion) indicates that the cooperative knows what the Board wants it to do; that is, submit itself to regulation by the Board or cease its operation as now conducted. The order would appear not to be subject to remand for uncertainty, or lack of "specificity," as the parties call it. Brady Transfer & Storage Co. v. United States, 335 U.S. 875, 69 S.Ct. 239, 93 L.Ed. 418, affirming D.C., 80 F.Supp. 110.

It would not appear incumbent on the Board at this time to tell the petitioner how far it can go without breaking the law.

The attention of the court has been called to the pendency of a proceeding before the Civil Aeronautics Board, Hearing Docket No. 5947, entitled "Investigation of Indirect Carriage of Property," and to H. R. 6310 pending before the 83rd Congress. From one or both sources the cooperative hopes to find relief from the order herein brought up for review. It would have the court suspend consideration of the case until it is re-

lieved one way or the other, legislatively or administratively. If such relief were assured next week or next month, the court might delay its decision, but there being no certainty as to the outcome elsewhere of either of petitioner's efforts for exemption, it does not seem wise to grant petitioner's motion to abate the review of the Board's order for which review the cooperative petitioned the court on April 8, 1953. Accordingly, the court has heretofore entered an order denying the motion of petitioner (Bay Area) to suspend or abate the review which it, itself, sought.

· The orders of the Board brought here for review are affirmed.