OVERSEAS NATIONAL AIRWAYS, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent.

No. 16527.

United States Court of Appeals District of Columbia Circuit.

Argued April 2, 1962.

Decided June 14, 1962.

Mr. Ramsay D. Potts, Jr., Washington, D. C., for petitioner.

Mr. Robert L. Toomey, Atty., Civil Aeronautics Bd., with whom Messrs. John H. Wanner, Gen. Counsel, Joseph B. Goldman, Deputy Gen. Counsel, O. D. Ozment, Associate Gen. Counsel, Litigation and Research, Civil Aeronautics Bd., and Richard A. Solomon, Atty., Dept. of Justice, were on the brief, for respondent.

Before WILBUR K. MILLER, Chief Judge, and DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Petitioner, Overseas National Airways (ONA), is a supplemental air carrier subject to the jurisdiction of the Civil Aeronautics Board operating under (1) a certificate of public convenience and necessity for interstate operations, (2) an interim exemption for overseas operations and (3) a blanket exemption for irregular and infrequent charter flights to carry property but not passengers to foreign points. In order to act as a common carrier of *passengers* in charter groups for trips to foreign points, petitioner must obtain exemption orders from the Civil Aeronautics Board for particular flights. The facts were largely stipulated in proceedings before the Board. The contentions on appeal revolve around the Board's findings and order relating to admitted facts.

ONA seeks review of a Board order (Order E–16895) finding that ONA had on various occasions engaged in common carriage of passengers in charter groups to points in Western Europe without first obtaining operating authority as required. The alleged violations, 37 in all, relate to charter contracts, sometimes called "wet leases" under which ONA carried passengers for other airlines. Under this form of contract or lease ONA as Lessor supplied the aircraft and crew to carry passengers with whom the Lessee, a foreign air carrier, had contracted by ticket or otherwise. The passengers carried in each case in the leased aircraft by ONA crews were solicited by the Lessee pursuant to its authority to hold out services as a carrier. ONA was paid directly by the foreign carrier pursuant to contract. At all times ONA aircraft were under ONA direction and control and operated pursuant to ONA safety authority.

ONA contends that no authority from the Board was required because these operations were for private carriage for a foreign carrier, not common carriage for hire. It is not disputed that these flights constituted a violation if in their execution ONA was a common carrier in foreign air transportation for it had no authority so to operate.

■ While a common carrier may in some circumstances operate as a private carrier, a claim of such private carriage must show that the private activity is distinguishable from the public or common transportation business regularly carried on. The claimed private carriage must be viewed in relation to and against the background of the entire carrying activity. See New York Central Railroad Co. v. Lockwood, 17 Wall. 357, 84 U.S. 357, 377, 21 L.Ed. 627 (1873); Pacific Northwestern Airlines v. Alaska Airlines, 80 F.Supp. 592, 12 Alaska 65 (D.C.Alaska, 1948).

Section 401(a) of the Federal Aviation Act of 1958, 72 Stat. 754, 49 U.S. C.A. § 1371(a), prohibits engaging in "air transportation" without a certificate from the Board. The Act defines "air transportation" as "the carriage by aircraft of persons or property as a common carrier for compensation or hire." Sec. 101(21), 72 Stat. 737, 49 U.S.C.A. § 1301(21).

■ ONA holds itself out generally to the public as available for foreign charter carriage to such persons as wish to charter its aircraft. This is a substantial part of ONA's business. Indeed, while not decisive, it is significant that ONA carried passengers under "wet lease" in at least one situation where ONA itself had solicited the charter group but the charter had gone to the "Lessee" foreign carrier. The record contains substantial evidence to sustain the Board's finding that ONA's carriage for the foreign air carrier was essentially the same as much of its own activity; the foreign carrier rather than the charter group became the "customer." The

difference was simply that the foreign air carrier became the charterer rather than the "Watch Tower Bible and Tract Society" or the "American Rocket Society." The holding that a carrier is to be viewed in the same light as any other charterer was correct. See United States v. Drum, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360 (1962); Fleming v. Chicago Cartage Co., 160 F.2d 992 (7th Cir.1947). United States v. Brooklyn Eastern District Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613 (1919), is readily distinguishable on its facts.

■ The second point on this appeal turns on the finding that on a number of separate occasions in 1958 and 1959, ONA undertook to provide substitute service on short notice to United States air carriers who had contracted to transport plane-load lots of passengers for Military Air Transport Service (MATS). In each such instance, both the original carrier for whom ONA was substituting and ONA itself had operating authority from the Board to perform service for MATS in its own name. The Board has ordered cessation of such substituted service except where authorization is first obtained. ONA contends that its undertaking with these air carriers to perform the contracts which those carriers had with MATS needed no separate additional exemption authority. It claims that the Board gave blanket exemption to all supplemental air carriers to carry MATS passengers or property under the circumstances existing. However, the exemption order provided that the exemption applied *"only* if such carrier is awarded a contract or contracts by a department of the Defense Department * * * and then only with respect to the particular transportation provided for by such contract." (Emphasis added.) ONA did not contract with MATS for the 24 flights complained of but rather with a carrier who in turn "sublet" the carriage contract to ONA.

The order on review is

Affirmed.