**TRANS NATIONAL TRAVEL, INC.**

v.

**The UNITED STATES.**

No. 659–81T.

United States Claims Court.

July 5, 1984.

Howard S. Boros, Washington, D.C., attorney of record, for plaintiff; Boros & Garofalo, P.C., Washington, D.C., of counsel.

Michael V. Marino, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant; Theodore D. Peyser and Donald H. Olson, Washington, D.C., of counsel.

ON CROSS–MOTIONS FOR
SUMMARY JUDGMENT

OPINION

SPECTOR, Senior Judge.

Section 4251 of the Internal Revenue Code is at the heart of this tax case.[1] This Code section imposes a tax on amounts paid for communication services, including local and toll telephone service. Companion section 4253 grants certain exemptions from the tax and in subdivision (f), it is provided that "(n)o tax shall be imposed under section 4251 on the amount paid for any toll telephone service described in section 4252(b)(2)[2] to the extent that the amount so paid is for use by a *common carrier ... in the conduct of its business as such.*" (Emphasis supplied).

The sole issue in this case, framed by cross-motions for summary judgment, is whether or not plaintiff is a "common carrier" entitled to the above-described exemption. There is no genuine dispute as to any material fact.

*Statement of Facts*

Plaintiff is a Massachusetts corporation engaged in the business of furnishing tour services to the public. It is self-described in its promotional literature as a "Boston based international travel organization,

---

1. 26 U.S.C. § 4251. All section references are to the Internal Revenue Code of 1954 in effect during the tax years in question.

2. Section 4252(b)(2) defines "toll telephone service", *inter alia,* as "a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time) to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons ... in a specified area which is outside the local telephone system area in which the station provided with this service is located."

(which) has arranged over 340,000 travelers' vacations since 1969." The vacation packages which it sells include air transportation, hotel accommodations, tips, ground transportation and optional dining programs.

As part of its business operations, plaintiff subscribes to a wide area telephone service (WATS). For the period January 1, 1977 through December 31, 1978 (the years at issue here), it was assessed the tax imposed by section 4251 of the I.R.C. in the amount of $11,986.11. In January 1980, it protested the assessment on the ground that it was a "common carrier" entitled to the exemption described in companion section 4253(f). Following disallowance of its claim and a series of administrative appeals, it sued in this court for a refund.

*Discussion*

Although one would not ordinarily regard a person engaged in the above-described business as a "common carrier", plaintiff cites a great deal of authority to the contrary. It argues that it is engaged in the business of selling charter air transportation to the public; that it charters aircraft from airlines for its own account, as a principal, and not as an agent of the airlines. It independently establishes the selling price for its services consisting of air transportation alone or in combination with a package tour. The airline has no contract with the travellers. Such activities, plaintiff argues, are characterized by

the Civil Aeronautics Board as "indirect carrier operations", which are closely regulated by the C.A.B.[3]

All charter tour operators must file a prospectus with the C.A.B. along with the actual air carrier. The regulatory restraints on charter tour operators are far more rigid than those imposed on scheduled air carriers, which are admittedly "common carriers" under the Internal Revenue Code.

Plaintiff relies on a "Technical Advice Memorandum" issued by the I.R.S. District Director in Jacksonville, Florida to another charter tour operator engaged in identical activities. That Memorandum[4] concludes that the taxpayer "is considered to be a common carrier for purposes of the exemption provided by section 4253(f) of the Code. Accordingly, (it) is not subject to the tax imposed by section 4251(a) for amounts paid for services described in section 4252(b)(2)."[5]

The above-quoted "Technical Advice Memorandum" relies upon and cites other revenue rulings, in addition to a decision of the C.A.B., affirmed on judicial review.[6]

Plaintiff's claim, however, has been denied on the basis of a later Revenue Ruling[7] which treats with the case of a "travel agency."[8] It rules that the "travel agency" is not entitled to the exemption provided by section 4253(f) of the Code because the aircraft are leased from the airlines,

---

3. Citing the Federal Aviation Act of 1958, as amended, 49 U.S.C. § 1301 et seq., and 14 C.F.R. Part 380.

4. Bearing Index Nos.: 4251.00–00 and 4261.00–00.

5. The taxpayer in that case also collected the transportation tax imposed by section 4261 of the Code and was, accordingly, directed to file returns and remit that tax to the I.R.S.

6. Rev.Rul. 76–405, 1976–2 C.B. 352, defines "common carrier" as "one holding itself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering its services to the public generally." Rev.Rul. 63–155, 1963–2

C.B. 566, relies on a holding of the C.A.B., that a resort hotel is engaged in "the carriage by aircraft of persons or property as a common carrier for compensation or hire." The C.A.B. was upheld in *Las Vegas Hacienda, Inc. v. C.A.B.*, 298 F.2d 430 (9th Cir.), *cert. denied*, 369 U.S. 885, 82 S.Ct. 1158, 8 L.Ed.2d 286 (1962). Rev.Rul. 75–296, 1975–2 C.B. 440, states that where independent travel agencies which sell tours in chartered aircraft are acting as principals (not agents), they are obliged to collect the transportation tax imposed by section 4261 of the Code and to remit it directly.

7. Rev.Rul. 80–34, 1980–1 C.B. 251.

8. Plaintiff states this is a "misnomer". It does not so describe *its* business.

and therefore the latter are the "carriers." [9]

The concept of "common carrier" has remained unchanged, plaintiff submits, since it originally evolved in the common law.[10] The term is not confined to the actual carrier, but extends to those who assemble property or people for transportation in leased equipment, or equipment under the control of others. It is further argued that the Internal Revenue Code sections imposing a tax on communication services and exempting "common carriers", did not change the historical common law definition of "common carriers." Meanwhile the Congress has interpreted and defined the term in the context of the Civil Aeronautics Act, the Federal Aviation Act, the Interstate Commerce Act, the Motor Carrier Act, the Federal Maritime Act and the Federal Communications Act, in a manner which would include those, such as plaintiff, who furnish tour services. It has been held, for example, that a company operating a freight terminal for railroads under contract is a common carrier although it neither owns nor leases railroad cars, but merely acts as agent for the railroads.[11] Plaintiff argues that its case is

even stronger since it acts as principal, except for the physical operation of the aircraft. Plaintiff rejects the I.R.S. position that when both a direct carrier and an indirect carrier are engaged in furnishing and selling air transportation, only the former can qualify as a common carrier. Plaintiff also observes that the Internal Revenue Code itself in section 7701(a)(33) [12] defines a "regulated public utility" as:

"E. A corporation engaged in the furnishing *or sale* of transportation *as a common carrier by air* subject to the jurisdiction of the Civil Aeronautics Board ...." (Emphasis supplied.)

Therefore, plaintiff contends there was no basis for the setting aside of prior Revenue Rulings [13] which would support plaintiff's position in this case.

Plaintiff has recited a litany of *regulatory* statutes [14] making no distinction between common carriers which engage in air transportation directly, and those which do so indirectly. Nor is any distinction drawn between carriers of property or persons. A number of cases have found indirect carriers of property to be common carriers.[15] The same has also been true of indirect carriers of persons.[16] And even

---

**9.** The Revenue Rulings cited in note 6, *supra,* are simply stated, in one word, to be "distinguished".

**10.** See note 6, *supra.*

**11.** *United States v. Brooklyn Eastern Dist. Terminal,* 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613 (1919). See also, *Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The Court held that "a common carrier does not cease to be such merely because the services it renders to the public are performed as agent for another." (*Id.* 306–307, 39 S.Ct. 286). In *United States v. Union Stock Yard & Transit Co.,* 226 U.S. 286, 33 S.Ct. 83, 57 L.Ed. 226 (1912), a stockyard was held to be a common carrier.

**12.** 26 U.S.C. § 7701(a)(33).

**13.** Note 6, *supra.*

**14.** See text preceding note 11, *supra.*

**15.** See, for example, *Railway Express Agency, Grandfather Certificate,* 2 CAB 531 (1941), holding that the REA was an air carrier under the Federal Aviation Act, when it functioned as an

independent contractor in the solicitation, promotion, collection and delivery of parcels, packages and other property for transportation by aircraft, even though it did not operate or control the operation of aircraft. See also *Universal Air, Investigation Forwarding Activity,* 3 CAB 698 (1942), involving a company which merely consolidated shipments which were then tendered to REA for shipment by air; *Airfreight Forwarder Case,* 9 CAB 473 (1948); *Consolidated Flower Shipments—Bay Area Violation,* 16 CAB 804 (1953), aff'd *Consolidated Flower Shipments, Inc.—Bay Area v. CAB,* 213 F.2d 814 (9th Cir. 1954); *Intra-Mar Shipping, Enforcement Proceeding,* 27 CAB 568 (1958).

**16.** See *Hacienda Hotels—U.S. Aircoach, Enforcement,* 26 CAB 372 (1958), a case involving a hotel as an indirect carrier. The direct carrier from which it leased or chartered aircraft, was also regarded as a common carrier. See also, *Dunes Hotel and Casino, Enforcement,* 33 CAB 1 (1961); *M & R Investment Co. v. C.A.B.,* 308 F.2d 49 (9th Cir.1962); *United States v. Caribbean Ventures, Limited,* 387 F.Supp. 1256 (D.C.N.J. 1974); *Monarch Travel Services, Inc. v. Associated Culture Clubs, Inc.,* 466 F.2d 552 (9th Cir.

airlines which lease aircraft from another airline, where the latter actually owns and operates the aircraft, have been classified as indirect carriers.[17] Many other authorities are cited including the Interstate Commerce Act (and its legislative history) and the Federal Communications Act.

In summary, plaintiff charges that the I.R.S. has no precedent to support its narrow definition of "common carrier", a definition which is at odds with the historical common law definition.

Defendant's responsive argument is simply that plaintiff is not a "common carrier" because it neither "carries", nor holds itself out to the public as a "carrier". Rather it is, in defendant's view, an "arranger of charter tours" which "assembles the various elements of its vacation trips, *i.e.*, air transportation, hotel accommodations, meals, tips, tour-guides, and ground transportation, which plaintiff then advertises and sells to members of the public as a package." Defendant notes that plaintiff's promotional literature prominently names the specific airline which will actually supply transportation. *Current* literature, in fact, states that "Trans National Travel, Inc. acts, *only as agent for the airlines* ..." and disclaims responsibility for loss or damage to person or property resulting from acts of those providing services for the trip, including transportation. The literature also refers to plaintiff as a "travel agent." [18]

Defendant further observes that plaintiff's vacation packages include transportation either by charter or on regularly scheduled flights, and in neither case does plaintiff have control over the aircraft. In defendant's view, plaintiff is therefore not a "carrier", and hence not a "common carrier". Furthermore, defendant argues that only one of the elements in plaintiff's charter tours involves transportation. The tax exemption applies only to communication services used by a common carrier *"in the conduct of its business as such."* (Emphasis supplied.) Hence, the exemption benefits only a "common carrier", and then only to the extent that communication services were used in "common carrier" related business.

The principal argument advanced by defendant is that the many authorities cited by plaintiff to support its case are all within the context of *regulatory* statutes and regulations. They are, therefore, deemed to be irrelevant. Defendant argues, for example, that the Federal Aviation Act was enacted to provide broad economic and safety regulation of "air transportation" and "air commerce." It is therefore not surprising that it should encompass the activities of charter tour operators, one of whose products is air transportation.[19]

By the same token, defendant notes that each of the six statutes relied upon by plaintiff for a definition of "common carrier" is a regulatory statute where the term

1972), *cert. denied,* 410 U.S. 967, 93 S.Ct. 1444, 35 L.Ed.2d 701 (1973); *C.A.B. v. Carefree Travel,* 513 F.2d 375 (2d Cir.1975).

**17.** See *Overseas National Airways, Enforcement,* 34 CAB 1 (1961), *aff'd sub nom. Overseas National Airways v. C.A.B.,* 307 F.2d 634 (D.C.Cir. 1962). In such cases, the lessee is regarded as a charterer who resells the space as a principal, thereby becoming an "indirect" air carrier.

**18.** Plaintiff responds that its *current* literature does not reflect the nature of its business back in 1977 and 1978, the tax years at issue. But it does not produce any promotional literature from those years, nor does it assert that it held itself out as a "common carrier" during those years.

**19.** Citing *Las Vegas Hacienda, Inc. v. C.A.B.,* note 6, *supra,* at 433, 436, in which the court said that the Board "is under an affirmative statutory duty to exercise its regulatory powers ... so as to foster sound economic conditions, promote economical and efficient service at reasonable charges, and avoid destructive competitive practices .... The Board thus interprets the Act in a way which makes effective economic regulation under the statute possible by bringing within the regulatory scheme *all those* who compete in the commercial market in the business of *offering air transportation to the public generally.*" (Emphasis supplied.)

is used broadly to invoke the jurisdiction of a regulatory agency "in order to bring order and stability to industries essential to national security, protect the public health and welfare, and provide for public convenience and necessity."

On the other hand, defendant points out, the Internal Revenue Code "is not, *per se*, a regulatory statute", its purpose being to raise revenue, and defendant therefore argues that statutes granting exemptions should be strictly construed.[20] Since plaintiff "promises no more than to arrange to have others supply the services (transportation) offered for sale", defendant contends that it is not a "common carrier" within the meaning of the relevant section of the Internal Revenue Code.

The court is persuaded that defendant's position is correct. It is significant that isolated sections of the Internal Revenue Code do in fact incorporate the regulatory definition of "common carrier" in certain instances[21], and it is even more significant that Congress has *not* chosen to do so in section 4253(f), which is at issue here.

Although this result is not without doubt, it is concluded that the reference to "common carrier" in section 4253(f) of the Internal Revenue Code was not intended to extend to plaintiff's business activities, and that plaintiff is not, therefore, exempt from the tax imposed by section 4251.

### Conclusion

Plaintiff's Motion for Summary Judgment is denied, defendant's Cross-Motion for Summary Judgment is allowed, and the Petition shall be dismissed.

20. Citing *United States v. Stewart*, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 (1940). In enacting the 1959 amendment to the Excise Tax Technical Changes Act of 1958 (Public Law 85–859, 1958–3 Cum.Bull. 92), the Senate identified only "railroads, airlines, and trucking companies," which (in defendant's view) shows a Congressional intent to benefit a more limited class of carriers than are included and controlled under regulatory statutes.

21. Section 7701(a)(33)(E); Section 1341(b); former section 1503(b)(2). These identify "a corporation engaged in the furnishing or sale of transportation as a common carrier by air, subject to the jurisdiction of the Civil Aeronautics Board...." Section 47(a)(7) identifies "an air carrier (as defined in section 101 of the Federal Aviation Act of 1958)."