**CIVIL AERONAUTICS BOARD,**
**Plaintiff,**

v.

**INTERNATIONAL EXCHANGE SCHOOL, a corporation incorporated under the laws of Utah, and Cloyd C. Wiscombe, Individually and as agent, officer, servant, or employee of International Exchange School, Defendants.**

**Civ. No. C–96–73.**

United States District Court,
D. Utah, C. D.

March 30, 1973.

C. Nelson Day, Salt Lake City, Utah, Bernard F. Diederich, for Civil Aeronautics Board.

F. Robert Reeder, Salt Lake City, Utah, for International Exchange School and Cloyd C. Wiscombe.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

RITTER, Chief Judge.

FINDINGS OF FACT

I

This is an action by the Civil Aeronautics Board (Board) brought under the provisions of Section 1007 of the Federal Aviation Act of 1958, as amended (Act), (49 U.S.C. § 1487) and under the general laws and rules relative to suits in equity arising under the Constitution and laws of the United States.

II

The plaintiff seeks to enjoin and require International Exchange School, its successors and assigns, and Cloyd C.

Wiscombe, individually and as agent, officer, servant or employee of International Exchange School and each of them, their officers, agents, brokers, employees and others acting in knowing concert with such persons from acting in violation of an Order to Cease and Desist (Order 72–11–110) issued against the International Exchange School and Cloyd C. Wiscombe, its president by:

i. Violating Section 401(a) of the Act by acting as indirect air carriers within the meaning of section 101(3) of the Act in the promotion and sale of inclusive tour charters or scheduled air transportation without first obtaining requisite Board authority, through any or all of the following practices:

(a) offering air transportation to the general public in the form of purported inclusive tour charters whether such offering be made by newspaper or other mass media, by direct mailings, or by personal presentations;

(b) collecting monies from persons offered such air transportation whether such monies are deemed tour deposits, registration fees, or insurance, tuition and classroom credit payments sold in connection with such air transportation;

(c) operating such air transportation;

(d) representing to the public authority to engage in any or all of the above described practices.

ii. Violating section 378.10 of the Regulations by advertising, soliciting, offering to sell and selling purported inclusive tours without having filed a tour prospectus with the Board.

iii. Engaging in unfair or deceptive practices and unfair methods of competition in air transportation and the sale thereof, within the meaning of section 411 of the Act and section 378.12 of the Regulations with respect to the promotion and sale of inclusive tour charters or scheduled air transportation.

The plaintiff further seeks to enjoin and require such persons from acting in any manner as listed above with regard to study group charters.

### III

Inclusive tour operators are granted exemption (thus requisite Board authority) from *inter alia* 401(a) of the Act by § 378.3 which provides:

Subject to the provisions of this part and the conditions imposed, tour operators are hereby relieved from . . . (certain) provisions of Title IV of the Federal Aviation Act of 1958, as amended, to the extent necessary to permit them to provide inclusive tours: . . .

### IV

Defendant International Exchange School (IES) is a corporation organized and existing under the laws of the State of Utah, with its principal place of business located at 2600 South State Street, Salt Lake City, Utah. IES is a citizen of the United States within the meaning of 49 U.S.C. § 1301(13) [section 101(13) of the Act.]

Defendant Cloyd C. Wiscombe (Wiscombe) is the President of IES, a citizen of the United States, and a resident of the State of Utah, residing at 1888 E. 7000 South, Salt Lake City, Utah.

IES is a company engaged in the business of arranging, soliciting, selling and operating overseas study and travel tours to members of the general public, primarily to students. Since early November, 1972, the defendants have from time to time been advertising, soliciting, offering to sell and selling various study and travel tours, including air transportation, as purported "inclusive tour charters" or "inclusive tours" in accordance with Part 378 of the Board's Special Regulations (14 CFR 378). The tour itinerary starts at various domestic cities and goes to various overseas points and returns. The tours have

been held out through a booklet entitled, "International Exchange School–1973", as from time to time supplemented by personal presentations to prospective tour participants, and by other means. Under such tours, IES has entered into a contract with each tour participant under which IES undertakes to provide the air transportation promised. IES charges a single tour price, without breakdown, which it has set and which will cover all costs of the tour and include a profit for IES. The tour participants have no commitment from any direct air carrier to provide the air transportation offered but look to IES to supply the air transportation sold. The defendants have been thus holding out to the general public that they are ready and willing to undertake for hire the transportation of passengers by air from points in the United States to points outside thereof. The defendants have been holding out as the purported tour operator of the purported inclusive tour charters with the charter flights to be actually flown by a supplemental air carrier. Wiscombe, as the chief operating officer of IES, has acted through or on behalf of IES and has engaged in the above described activities.

The IES booklet as originally filed held out purported inclusive tour charters and also held out study group charters also regulated by the Board Regulations as Part 373. The booklet made various references to particular tours as being "operated in accordance with . . . Regulation 373" and a reference to the air transportation as being based on a "Study Group Charter 373". The tours did not conform to the Board's requirements for Study Group Charters. Such tours were subsequently eliminated.

The Board believes that the defendants' operations presently being held out as inclusive tour charters flown by supplemental air carriers may be summarily changed to the holding out of scheduled air transportation flown by scheduled air carriers. In either situation, the defendants' operations were found by the Board in Order 72–11–110 to be activities as an indirect air carrier in violation of section 401(a) of the Act and the Board's Order proscribed the activities of the defendants in both situations.

## V

Under the Board's regulatory scheme, any person acting as a tour operator of inclusive tours established by the Board under Part 378 of its Regulations (14 CFR 378) or acting as a study group charterer of study group charters established by the Board under Part 373 of its Regulations (14 CFR 373) is acting as an indirect air carrier within the meaning of 49 U.S.C. § 1301(3) [section 101(3) of the Act] and is therefore engaged in air transportation which in turn requires authority from the Board. 49 U.S.C. § 1371(a) [section 401(a) of the Act] prohibits any carrier from engaging in air transportation unless it has been issued a certificate of authority from the Board. Subject to the provisions and conditions imposed in Part 378 of the Board's Regulations (14 CFR 378) a person acting as an indirect air carrier is exempted from the certification requirement of section 401(a) of the Act. Unless a person has filed a tour prospectus complying with the requirements of Part 378.13 for his inclusive tours he is prohibited by section 378.10 of the Board's Regulations (14 CFR 378.10) from operating any purported inclusive tours as well as advertising, soliciting, offering to sell or selling them. Under Part 373 of the Board's Regulations (14 CFR 373) a study group charterer may also be exempted from 401(a) of the Act by compliance with that Board regulation. Unless a person has filed a proper study group statement for his study group charters, he is further prohibited by section 373.10 of the Board's Regulations (14 CFR 373.10) from operating any purported study group charters as well as soliciting or advertising them.

Such activities as engaging in operations as an indirect air carrier without

authority, violating the provisions of Part 373 or Part 378 of the Board's Regulations, and other activities are regarded by the Board as unfair or deceptive practices and unfair methods of competition in air transportation and the sale thereof. On November 17, 1972, the Board acknowledged receipt of what defendants believed to be a tour prospectus. On December 18, 1972, they advised defendants they required additional information. Such information was filed January 22, 1973. On January 24, 1973, the Board required additional information. On February 15, 1973, defendants filed the information requested. On February 16, 1973, the Board requested still further information. On March 12, 1973, defendants supplied such additional information.

## VI

The Board acknowledged that defendants' tour prospectus met the requirements of Part 378 of the Regulations on March 22, 1973. The defendants were not in substantial compliance with the other conditions in Part 378 in that they were not complying with the requirement therein and applicable to them that all deposits by tour participants to a tour operator be deposited with and maintained by a bank in an escrow account as is fully set forth in section 378.16 of the Board's Regulations (14 CFR 378.16). The defendants were not in such substantial compliance with such conditions in Part 378 from on or about November 1, 1972 to March 22, 1973. Upon approval of any necessary waivers by the Board, defendants should be in substantial compliance with such conditions and requirements of Part 378.

The defendants have not filed and do not have a study group statement under Part 373 on file with the Board for the study group charters which they held out from on or about November 1, 1972 to on or about January 22, 1973. Defendants are not now offering a study group charter.

## VII

The Board by consent Order 72–11–110, issued on November 27, 1972 against the defendants, found that by virtue of activities of the defendants they were acting as indirect air carriers within the meaning of section 101(3) of the Act [49 U.S.C. § 1301(3)] and were in violation of the Act and Board Regulations. The Board thus ordered the defendants to cease and desist from:

i. Violating section 401(a) of the Act by acting as indirect air carriers within the meaning of section 101(3) of the Act in the promotion and sale of inclusive tour charters or scheduled air transportation without first obtaining requisite Board authority.

ii. Violating section 378.10 of the Regulations by advertising, soliciting, offering to sell and selling purported inclusive tours without having filed a tour prospectus with the Board.

iii. Engaging in unfair or deceptive practices and unfair methods of competition in air transportation and the sale thereof, within the meaning of section 411 of the Act and section 378.12 of the Regulations with respect to the promotion and sale of inclusive tour charters or scheduled air transportation.

## VIII

The defendants have agreed to henceforth deposit all money, whether it be in the form of checks, money order, or cash, received from tour participants whether it be for registration fees, tour payments, insurance payments, classroom credit payments, or otherwise, into the escrow accounts of International Exchange School (IES) established at the First Security Bank of Utah (Bank) for inclusive tour charters. Such deposited money is to be disbursed only in accordance with the Board's Regulations at Part 378. The defendants have further agreed to submit a full and accurate ac-

counting of all money heretofore collected and the type enumerated above, to include previously deducted commissions. Such an accounting is to list, as a minimum all money collected from tour participants identified by name and by charter flight, all refunds made, and all money still owed. Such an accounting will be submitted to the United States Attorney, CAB and Bank with a certification incorporating the language of and filed subject to 18 U.S.C. § 1001.

The defendants have agreed to further insure the financial responsibility of their tour program and the supplying of the transportation and all other services, and facilities in accordance with the contracts with the tour participants, by (in addition to that listed above) securing surety bonds in the form prescribed by Part 378 of the Board's Regulations in the amount equal to the total amount of money that has been collected from tour participants for the 1973 IES tours and related services and not held in escrow; such total of money collected is to include money collected as registration fees, commissions, insurance payments, tour money, classroom credit payments and otherwise. Such bonds are to be maintained and discharged as prescribed by Part 378. Such bonds are presently in effect. These bonds are in addition to the minimum bonds required by section 378.16(b)(i). Such agreement to secure a surety bond in the amount of $10,000 per flight plus the total amount of money that has been collected and not on deposit may be modified to the extent and only to the extent that such agreement, which is in essence one of the provisions under section 378.16 of the Board's Regulations (14 CFR 378.16), is waived by the Board by its Order. A copy of such a Board Order, if obtained, will be submitted to this Court.

The defendants have further agreed to refund to the tour participants on the inclusive tour charters which were to have been flown by Dan-Air Services, Ltd. and which now have apparently been cancelled all money collected from such participants for such charters and related services and further to henceforth stop collecting any money for such charters and promptly return any money sent in for such charters. Notice to all tour participants that had attempted to book passage on such flights and have paid any money therefor will be made by the defendants by properly addressed first class letters indicating that such flights have been cancelled and that unless they request passage on another flight within 30 days from the day of the letter and same is received by IES within the 30 day period, all money collected from such parties will automatically be refunded. All refund requests will be promptly paid.

## IX

American College Center for Study Abroad (ACCSA) receives monies from tour participants. The entity was represented by the defendants to be a retail travel agent under section 378.16 of the Board's Regulations which made sales of inclusive tour charters for International Exchange School (IES) and which was authorized to deduct commissions of $150 to $200 on all such sales.

The Board believes that ACCSA is presently functioning as an *alter ego* of Cloyd C. Wiscombe and is not a retail travel agent within the meaning and intention of section 378.16 of the Board's Regulations and is not entitled to deduct any commissions from sales of inclusive tour charters.

Mr. Wiscombe is the principal operating officer of both IES and ACCSA. The two entities share common office space, common utilities and have recently transferred several employees from the "payroll" of former to the latter. Mr. Wiscombe in either case signs the payroll checks.

Mr. Wiscombe has agreed to henceforth stop holding out ACCSA as a retail travel agent under section 378.16 of the Board's Regulations and stop deducting commissions from sales of inclusive tour charters for IES. Mr. Wiscombe has agreed to place all money heretofore

collected as commissions by the ACCSA and not presently paid out as expenses but which is presently in the checking account of ACCSA, or in the offices of ACCSA or in transit between, into the escrow accounts of IES established at the First Security Bank of Utah for inclusive tour charters.

## X

The defendants' inclusive tour charters must provide, as a condition of Part 378 of the Board's Regulations, all hotel accommodations and necessary air or surface transportation between all places on the itinerary, including transportation to and from air and surface carrier terminals utilized at such places other than the point of origin. As the plaintiff has reasonable cause to believe that sufficient arrangements have not been made with suppliers of such services listed above to give reasonable assurance that the same will be provided to the tour participants, defendants have agreed to submit to the CAB and U. S. Attorney evidence of firm commitments therefor when available and they have further agreed to exert all reasonable efforts to insure that all services as held out are provided or that substitutions are of equal quality.

## •XI

The Board believes that unless restrained by this Court the defendants intend to and will in the manner and form aforesaid, or otherwise, continue to engage in activities in violation of the Board Order 72–11–110 and Part 378 of the Board's Regulations. Nothing has been presented to show that there is any reasonable expectation that the defendants will not again hold themselves out as indirect air carriers under Part 373 of the Board's Regulations without requisite Board authority by promoting, selling and operating purported study group charters or that they will not again summarily change their present holding out to that of scheduled air transportation wherein they are acting as indirect air carriers without requisite Board authority.

## CONCLUSIONS OF LAW

### I

This Court has jurisdiction over the parties and the subject matter of this action by virtue of the provisions of section 1007 of the Federal Aviation Act of 1958, as amended (Act) (49 U.S.C. § 1487) and under the general laws and rules relative to suits in equity arising under the Constitution and laws of the United States.

### II

Because the defendants did not have a proper tour prospectus on file with the Board and were not in substantial compliance with the other conditions of Part 378, and because of each and both such facts, the defendants were not exempted by section 378.3 of the Board's Regulations (14 CFR 378.3) from section 401(a) of the Act. The defendants did not have requisite Board authority to engage in the promotion, sale and operation of inclusive tour charters.

The acts of the defendants constitute violations of, or there exists a reasonable likelihood of violations of, Board Order 72–11–110 and thus Part 378 of the Board's Regulations and/or section 401(a) and section 411 of the Act. Further there is a reasonable likelihood that the defendants may once again hold themselves out as indirect air carriers providing study group charters under Part 373 of the Board's Regulations without requisite Board authority and thus in violation of Part 373 and section 401(a) of the Act.

### III

Such acts or reasonable likelihood of acts by the defendants are subject to be enjoined by this Court upon the application and suit of plaintiff as aforesaid, under the express provisions of the Act and more particularly, section 1007 thereof, (49 U.S.C. § 1487).