**CIVIL AERONAUTICS BOARD,**
**Plaintiff,**

v.

**Rodney DREYER and North Atlantic Buying Service, Inc., Defendants.**

**No. 78 C 1475.**

United States District Court,
E. D. New York.

Oct. 30, 1980.

**906**

Robert M. Beckman, Washington, D. C., for defendants.

Edward R. Korman, U. S. Atty., for the Eastern Dist. of New York by Reuben S. Koolyk, Asst. U. S. Atty., Brooklyn, N. Y. (Howard M. Schmeltzer, Bureau of Consumer Protection, Civil Aeronautics Board, Washington, D. C., of counsel), for plaintiff.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

The instant action is no stranger to this Court. Beginning in 1977 when the Civil Aeronautics Board (hereinafter "CAB" or the "Board") instituted it pursuant to § 1007 of the Federal Aviation Act of 1958 as amended, 49 U.S.C. § 1487 (1976), this Court has been asked to decide a number of issues.[1] The motion now before the Court seeks to suppress the deposition of defendant Rodney Dreyer taken by the CAB on December 6, 1977. The defendants argue that the deposition was improperly filed with the Court in this action. The second motion seeks a stay and a remand of the instant action to afford the CAB an opportunity to reevaluate its prosecution in light of "changed circumstances".

I. *Motion to Suppress the December, 1977 Deposition of Rodney Dreyer.*

■ The defendants argue that Rodney Dreyer's December, 1977 deposition must be suppressed because the CAB was without authority to make "civil investigative demands backed with subpoena power." This contention, however, plainly ignores the import of the relevant regulation, which explicitly provides:

Upon request of the Director, Bureau of Enforcement, any Member of the Board, the chief administrative law judge or the administrative law judge designated to preside . . . may issue a subpoena direct-

ing the person named therein to appear " . . . to testify or to produce documentary evidence relating to any matter and investigation . . .

14 C.F.R. § 305.7

Defendant's reliance in support of its position on *See v. City of Seattle*, 387 U.S. at 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) and *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), is misplaced. These cases address the issue of whether a property owner may refuse entry to a health or fire inspector who has no search warrant. Upon holding that such an intrusion was an impermissible search under the Fourth Amendment, the Court required that, absent an emergency, a warrant must be procured prior to inspection. Mr. Dreyer has failed to demonstrate what effect, if any, these decisions have on the constitutionality of an investigative subpoena issued pursuant to 14 C.F.R. § 305.7. Accordingly, this Court concludes that the subpoena of Mr. Dreyer was properly issued pursuant to the Board's statutory subpoena power.

■ Mr. Dreyer next contends that Part 305 investigations are "strictly confidential," and that disclosure of any evidence obtained in such a proceeding is improper. He urges that the sole function of Part 305 investigations is to determine whether or not formal proceedings will be brought and not to assist judicial proceedings. To bolster this contention, defendants have cited § 902(f) of the Act, 49 U.S.C. § 1472(f) (1976), which makes disclosure of information obtained "during the course of an examination of the accounts, records and memoranda of an air carrier or which is withheld from public disclosure under § 1504 of this title" punishable as a criminal offense. In addition, defendant asserts

1. By Memorandum and Order dated October 26, 1978, the Court denied Dreyer's cross–motion to dismiss and also declined to issue the preliminary injunction, pending fuller development of the record. CAB thereafter attempted to depose Rodney Dreyer and others familiar with NABS' operations. All these prospective witnesses declined to testify, claiming their Fifth Amendment privilege. This Court then ordered the deposition of Rodney Dreyer to be taken on April 6, 1979 pursuant to 18 U.S.C. § 6001 *et seq.* (1976). In February, 1980, the CAB moved for partial summary judgment. This motion is presently pending before the Court and has been adjourned by consent until November, 1980.

that a Board order[2] was required before he could release copies of the CAB's investigative records to this Court.[3]

It is the opinion of this Court, however, that the defendants contention misconstrues the rationale of Part 305. A Part 305 proceeding is a means by which the Civil Aeronautics Board, prior to bringing formal charges, employs compulsory process to inquire into possible regulatory violations. These investigations are conducted in a "non–public" forum in order to protect participants from adverse publicity and invasion of privacy upon appearing at a Part 305 investigation. *See* CAB Order C–206, Docket No. 25953 (January 31, 1977). Since one of the reasons Part 305 investigations are held is to obtain evidence of violations that could support the prosecution of an enforcement proceeding, the Board contemplated that such evidence would be used in enforcement actions brought in federal courts, where it is admissible. *See* 28 Fed. Reg. 5990 (May 28, 1963). To interpret the regulation as defendant suggests would render the use of Part 305 as an investigative procedure impossible.

■ It is well–settled that an agency's interpretation of its own regulations is controlling unless it is erroneous or inconsistent with the law. See *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Chrysler Corp. v. Tofany*, 419 F.2d 499, 512 (2d Cir. 1969). *See also* K. Davis. Administrative Law Treatise § 5.03 (1958). In CAB Order C–213, Docket No. 29593, adopted by the CAB on July 29, 1977, and submitted by plaintiffs in opposition to this motion, the Civil Aeronautics Board held that, "while § 305.10 provides that the records of Part 305 proceedings are internal Board documents not available to the general public, this does not mean that such

records remain nonpublic *in perpetuo*." The Board then referred to the Explanatory Statement to the enactment of Part 305, which stated that an investigative record would lose its non–public status when "used in subsequent enforcement actions in accordance with law." 28 Fed.Reg. 5989 (1963).

The Board's position is consistent with the interpretation by the courts of similar regulations concerning non–public investigations conducted by other agencies. In *LaMorte v. Mansfield*, 438 F.2d 448 (2d Cir. 1971), the Second Circuit had the opportunity to interpret 17 C.F.R. § 203.6, an SEC regulation nearly identical to the Part 305 regulation at issue here. The Court noted: "The long–standing regulation . . . was an articulation of the discretion possessed by the *agency* . . . whether to disclose information acquired in the course of certain investigatory proceedings. * * * To the extent that a privilege exists, it is the agency's, not the witness'." *Id.* at 451.

In its reply, defendants argue that the CAB has held that § 902(f) of the Federal Aviation Act, 49 U.S.C. § 1472(f) (1976), does apply to information gathered via a Part 305 proceeding. In support of this contention, Rodney Dreyer and NABS rely on Order C–206, which they urge the Court to order disclosed. Such an order is unnecessary because plaintiffs provided the court with a copy of it at oral argument.[4]

Order C–206 was the CAB's response to Rodney Dreyer's and NABS' Petition for Review of Order C–185, Docket No. 29593 (July 30, 1976), which instituted an informal non–public investigation into the unlawful practices in the North Atlantic Charter Market. At that time, Rodney Dreyer and NABS contended that the issuance of a

---

2. CAB Order 80–5–220, Memorandum of Law in Support of Defendants' Motion to Bar Use of Evidence Obtained in an Investigation Pursuant to 14 C.F.R. Part 305, Attachment.

3. *See also* 14 C.F.R. § 305.10:
   Except as required by law, the remainder of the record of such proceedings shall constitute internal Board documents which shall not be available to the public.

4. Defendants have put forward two arguments in opposition to the submission of the order and the letter. The argument concerning the letter will be addressed in Note *16.* Defendants' second argument is consistent with their position throughout, namely, that release of the Order to this Court is a federal offense. This argument is without merit.

non–public order contravened the Federal Aviation Act of 1958, because §§ 1001 and 204(a) of the Act, 49 U.S.C. §§ 1481, 1324 (1958), require all Board orders to be made public.

In rejecting the defendants' claim, the Board cited § 1104 of the Act, which provides for the withholding of information from the public when the information "would adversely affect the interests of such person and is not required in the interest of the public." 49 U.S.C. § 1504. The CAB then noted that the defendants' interpretation would make the Act inconsistent, and would expose the Board and its employees to criminal liability.[5]

It is just this position that Rodney Dreyer and NABS *now* urge upon this Court with respect to the release of Mr. Dreyer's 1977 deposition. For this reason, this Court finds such a position to be without merit. Two additional points, however bear consideration. First, the Court has noted that Order C–206 relies on another section of the Act to support its interpretation of § 204(d)'s call for disclosure. Section 1001, 49 U.S.C. § 1481 (1976), provides that the Board "... conduct their proceedings in such manner as will be conducive to the proper dispatch of business and to the ends of justice." Thus, the Board is free to conduct its proceedings as public or non–public in its own discretion. Second, the Board's rationale for not disclosing the order initiating a non–public investigation, namely the protection of those under investigation, is not present here, where the enforcement bureau has decided to initiate formal public proceedings.

Finally, it has been Rodney Dreyer's and NABS' position that a formal vote of the Board is necessary to order disclosure of Part 305 material in an enforcement proceeding. The parties have stipulated that there was no CAB vote to release this material to the Court.[6] Thus, according to the

defendants, plaintiff has committed a federal offense by releasing the deposition and Order C–206 without a Board vote. The Court rejects this view.

It has already been established as the law in this case[7] that the Bureau of Consumer Protection (the "Bureau") has the authority to initiate this action. Moreover, 14 C.F.R. § 385.22, entitled "Delegation to the Director, Bureau of Consumer Protection", authorizes the Director to:

(b) Issue orders initiating and terminating informal nonpublic investigations under Part 305 of this chapter...

(d) Institute and prosecute in the proper court, as agent of the Board, all necessary proceedings for the enforcement of the provisions of the act or any rule, regulation, requirement or order thereunder...

Therefore, it is the opinion of this Court that the foregoing sections constitute a lawful delegation of authority to the Director of the Bureau of Consumer Protection, to institute actions like this one and to disclose relevant Part 305 material for the purpose of these enforcement actions. The adoption of defendants' interpretation of the authority to delegate would hamper the Bureau's discretion "as agent of the Board" to prosecute "all necessary proceedings." This interpretation is borne out by the Minutes of Board Meetings of April 9, 1962 and January 16, 1974,[8] submitted by plaintiff, wherein the Board authorized the Bureau of Enforcement (now the Bureau of Consumer Protection) to disclose information obtained from non-public investigatory hearings.

Accordingly, defendants' motion to suppress use of Rodney Dreyer's Part 305 deposition is denied.

II. *Dreyer's Motion for a Stay of These Proceedings and a Remand of this Action to the CAB.*

Defendants' second motion embodies its request for a stay of these proceedings and

---

5. *See* Section 902(f), 49 U.S.C. § 1472(f).

6. Szrom Deposition, p. 41.

7. *See* Memorandum and Order of this Court, October 26, 1978 at pp. 3–5.

8. Plaintiff's Memorandum in Opposition to Defendants' Motion to Bar Use of Evidence and to Remand, Exhibits B and C.

a remand to the Board to ascertain whether this action should be continued. Mr. Dreyer and NABS contend that "changed circumstances" warrant the CAB's re–evaluation of this action. These include: (a) the withdrawal of the regulations Dreyer and NABS are alleged to have violated[9]; (b) the change in the CAB's views on deregulation[10] and enforcement; (c) the CAB's encouragement of the type of activities Dreyer is alleged to have conducted in contravention of the regulations; and (d) the fact that NABS ceased doing business in April of 1977.

To support their contentions that deregulation policy and revocation of the regulations mandate a remand, Rodney Dreyer and NABS have argued that this situation is "virtually identical" to one that was before the United States Supreme Court in *Burlington Truck Lines v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), where the Court held that the District Court erred when it failed to remand a case to the Interstate Commerce Commission for re–evaluation in light of a statutory change. The District Court enforced a Commission order although a statute enacted subsequent to the action complained of made it an

> unfair labor practice for any labor organization and any employer to enter into any contract or agreement . . . whereby such employer ceases or refrains . . . from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer . . ."

371 U.S. at 171, 83 S.Ct. at 247, quoting from the Labor–Management Reporting and Disclosure Act of 1959, which added § 8(e) to the National Labor Relations Act, 73 Stat. 543, 29 U.S.C. § 158(e) (1976).

Similarly, defendants' argue that, with the enactment of the Airline Deregulation Act of 1978, P.L. 95–504, 92 Stat. 1705, 49 U.S.C.A. § 1301 (1979–80 Supp.), and the International Air Transportation Competition Act of 1979, P.L. 96–192, 94 Stat. 35, 49 U.S.C.A. § 1301 (1979–80 Supp.), Congress substantially changed CAB Policy to favor free competition and deregulation. Dreyer and NABS have submitted a July 28, 1978 letter from the Chairman of the CAB to the United States Attorney for the Eastern District of New York, which purports to outline the new policy.[11] Defendants also point out that the regulations Mr. Dreyer is alleged to have violated, 14 C.F.R. Parts 371, 372a, 373, 378 and 378a were revoked on January 1, 1979. Accordingly, Mr. Dreyer and NABS assert that these changes mandate a remand of this case to the CAB in accordance with *Burlington*.

■ This Court agrees with the defendants that there has been a significant change in CAB policy during the pendency of this action. This is reflected in both the new statutes and the July, 1978 letter. The plaintiffs, however, allege that Mr. Dreyer and NABS violated the surety bond and escrow agreement provisions of the regulations. These consumer protection requirements are the same under both the new and old regulations.[12] Accordingly, *Burlington Truck Lines v. United States*, 371 U.S. at 156, 83 S.Ct. at 156, is inapposite because the regulations at issue have not undergone a change.

Mr. Dreyer and NABS also have submitted letters[13] exchanged by the CAB's General Counsel and the Honorable John Shenefield, Associate Attorney General of the United States, to support their argument that the Eastern District U. S. Attor-

---

9. Defendants are alleged to have violated 14 C.F.R. Parts 371, 372a, 378 and 378a of the CAB's charter regulations, which were revoked on January 1, 1979.

10. *See* International Air Transportation Competition Act of 1979, 49 U.S.C.A. § 1301 *et seq.* (1979–80 Supp.)

11. "We intend to pursue . . . cases of monopolization commercial bribery, harmful discrimi-

nation, and anticompetitive schemes among travel agents." Letter from Alfred E. Kahn, Chairman of the CAB, to the Honorable David Trager, United States Attorney for the Eastern District of New York.

12. Szrom Deposition at pp. 29–30.

13. Memorandum of Law in Support of Defendants' Motion for Remand, Attachments 1 and 2.

ney has not properly enforced the new CAB Policy, and that the case should be remanded or discontinued. An examination of these letters reveals a disagreement over when the "East Coast Decree", aimed at prohibiting airline "rebating", should be allowed to lapse. This difference of opinion concerning the decree is irrelevant to this action. Here, both the Eastern District U. S. Attorney's Office and the Bureau are seeking to enjoin Rodney Dreyer and NABS. Thus, they share a common opinion as to the merits of the instant litigation.

Defendant next argues that since the Board did not vote to initiate this action, a remand is necessary to determine whether the action is still meritorious. In light of this Court's previous discussion of the Board's lawfully delegated authority to institute this action, Mr. Dreyer's contentions that the action was improperly initiated cannot be sustained. Moreover, this Court has previously held this action to have been lawfully commenced. Such a conclusion therefore is the law of the case.[14]

Mr. Dreyer and NABS also argued that the confusion over the CAB definition of "indirect air carrier" has not been settled. Therefore, in deciding this action, the Court will be called upon to interpret this term. To support its position that the Court should defer to the CAB for such a definition, the defendants cite Order 80–5–202, Docket No. 37949 (May 29, 1980), in which the CAB noted that the issue of whether the agents under one of its new ticket sales programs were "indirect air carriers" had not yet been determined.[15]

Mr. Dreyer's and NABS' argument ignores the fact that the statutory interpretation as to what constitutes an "indirect air carrier", under either the new or the old regulations, is properly the province of the courts. As the Second Circuit has stated, "when the agency chooses to go to the district court for enforcement [of the Act] it makes very little sense to refer the very question at issue to the agency." *CAB v. Aeromatic Travel Corp.*, 489 F.2d 251, 254 (2d Cir. 1974). Moreover, to maintain that the court must first defer to the agency for a determination of what constitutes an "indirect air carrier" is to ignore the abundant case law produced by this issue. *See CAB v. Carefree Travel, Inc.*, 513 F.2d 375 (2d Cir. 1975), *aff'g*, 13 Avi. 17, 318 (E.D.N.Y. 1974); *Monarch Travel Service, Inc. v. Associated Cultural Clubs, Inc.*, 466 F.2d 552 (9th Cir. 1972), *cert. denied*, 410 U.S. 967, 93 S.Ct. 1444, 35 L.Ed.2d 701 (1973); *Railway Express Agency, Inc. v. CAB*, 345 F.2d 445 (D.C.Cir.), *cert. denied*, 382 U.S. 879, 86 S.Ct. 162, 15 L.Ed.2d 120 (1965); *M&R Investment Co., Inc. v. CAB*, 308 F.2d 49 (9th Cir. 1962); *Las Vegas Hacienda, Inc. v. CAB*, 298 F.2d 430 (9th Cir. 1962); *Airborne Freight Corp. v. CAB*, 257 F.2d 210 (D.C. Cir.1958); *CAB v. International Exchange School*, 357 F.Supp. 819 (D.Utah 1973). Thus, this argument too must be rejected.

Finally, plaintiff has produced an exhibit which demonstrates that a remand is unnecessary. By letter dated September 10, 1980,[16] Reuben B. Robertson, the former

---

14. *See* Memorandum and Order of this Court, October 26, 1978, at pp. 3–5.

15. Memorandum of Law in Support of Defendants Motion for Remand, Attachment A. Defendants have also relied on this Order granting an exemption pursuant to § 416 to Southwest Airlines, in support of their argument that the CAB is now encouraging the activity Dreyer is accused of. This is a further indication, they reason, of the broad policy shift which has occurred at the CAB. However, defendants ignore the real reason the CAB has brought this action, namely, for Dreyer's failure to comply with the consumer protection regulations. Accordingly, this argument cannot be sustained.

16. Plaintiffs submitted this letter at oral argument over defendants' objection as to its relevancy. Defendants argued that Fed.R.Evid. 408 precluded the use of the letter because it represented an offer to compromise. It is the opinion of this Court that Rule 408 does not require the exclusion of this letter. First of all, the Assistant U. S. Attorney took care to redact any and all references to any offer to compromise. Second, the letter was an offer of proof as to the Director of the Bureau of Consumer Protection's intention to continue this case despite the policy change. Accordingly, it is offered to prove a consequential, material fact in issue other than the amount of the claim. 2 Weinstein and Berger, ¶ 408[5] at 408–27 (2d ed. 1979).

Director of the Bureau of Consumer Protection, informed defendants' counsel that, in his view, "[l]egal and policy changes that have substantially liberalized pricing requirements and reduced barriers to entry . . . have not eliminated . . . charter regulations that are intended to provide participants with financial security and other consumer protections." Therefore, Mr. Robertson sees no reason to discontinue this proceeding. As this Court has already noted, the Director of the Bureau of Consumer Protection is the official authorized to "institute and prosecute, as agent of the Board, all necessary proceedings for the enforcement of the provisions of the Act . . ."[17] The Court thus must defer to his decision to prosecute.

Accordingly, it is the opinion of this Court that the change in CAB policy does not warrant a remand of this action to the CAB.

Finally, Rodney Dreyer and NABS argue that, since the defendants have not engaged in the actions complained of for over three years, the plaintiff is really asking for an "advisory opinion." It is well settled that courts do not issue such opinions. *American Book Company v. Kansas*, 193 U.S. 49, 24 S.Ct. 394, 48 L.Ed. 613 (1904).

Moreover, the defendants contend that no need exists for this action because the issues it involves are moot. Accordingly, they question whether the entire proceeding is not aimed at enjoining acts that are a "mere possibility." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). It is their contention that a remand will afford the CAB the opportunity to reevaluate this action in light of these changes.

■ One purpose of an injunction is to discourage future violations. Along with

its power to hear the case, the Court's power to grant injunctive relief survives discontinuance of the illegal conduct. *United States v. W. T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897; *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975); *SEC v. Manor Nursing Centers Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972); *Federal Election Commission v. Weinsten*, 462 F.Supp. 243 (S.D.N.Y.1978). "The necessary determination is that there exists some cognizable danger of recurrent violations, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897.

■ In the instant case, the Board believes that Rodney Dreyer is continuing his illegal activity under other corporate identities. Thus, it maintains that there are no assurances that similar unlawful conduct will not be repeated in the future. The Court is of the opinion that this fear presents a sufficient danger of recurrence to permit the action to go forward in its present form.

Accordingly, Rodney Dreyer's and NABS' motion for a stay of these proceedings and a remand is hereby DENIED.

It is

SO ORDERED.

---

**17.** 14 C.F.R. § 385.22(d).